CHARLES P. WEBBER, et als., *vs.* GRANVILLE CHASE COMPANY.

Washington.   Opinion March 11, 1918.

*R. S., Chap. 114, Sec. 8, interpreted.   Rule as to necessity of recording a permit to cut logs.*

The plaintiffs in the winter of 1913 gave a written permit to one Allen of Dennys-ville to enter upon their lands and cut and haul therefrom the logs and lumber described in the plaintiff's writ.   Allen sold the logs and lumber cut under the permit to the defendant to be delivered at their mill in Baring, and they were fully paid for.   The defendant had no knowledge of the permit or its terms and conditions when it purchased the logs.

The only question here involved is whether this permit should have been recorded so as to give notice to innocent third parties, intending to purchase, that the timber and lumber made therefrom were subject to a lien.

*Held:*

(1)   No claim could be made in favor of such record prior to the enactment of Chapter 32 of the Public Laws of 1895.

(2)   The letter of this statute now found in Sec. 8, Chap. 114, R. S., 1916, does not apply.

(3)   Nor was it the intention of the legislature that it should apply to a permit.

Action of trover to recover the value of certain logs and the lumber manufactured therefrom cut on land of the plaintiffs.   Defendants filed plea of general issue and also brief statement.   By agreement of counsel case was reported to Law Court upon certain agreed statement of facts, the court to render final judgment upon so much of the evidence as legally admissible.   Judgment in accordance with opinion.

Case stated in opinion.

*C. B. & E. C. Donworth*, for plaintiffs.

*Reed V. Jewett, and J. H. Gray*, for defendant.

SITTING:   CORNISH, C. J., SPEAR, KING, HANSON, PHILBROOK, JJ.

SPEAR, J.   The plaintiffs in 1894 were the owners of Hinckley township in Washington County.   Herbert E. Allen, Dennysville, in

the winter of 1913-14 entered upon the land, under a written permit from the plaintiffs, and cut and hauled therefrom the logs and lumber described in the plaintiff's writ.

On June 30, 1913, the defendants made a contract with Allen to purchase from him these logs and lumber, to be delivered, properly boomed, at the mouth of Musquash stream in said township. The logs were received by the defendants at their mill in Baring and paid for in full on May 16, 1914.

On May 18, 1914, the plaintiffs wrote and advised the defendant that Allen had not paid the stumpage due on the logs. The defendants had no knowledge of a permit or its terms and conditions, when it purchased the logs. The action is a suit in trover for the value of the logs and lumber. The permit in the case was in the ordinary form, containing a clause in which it is agreed that the grantor shall reserve and retain full and complete ownership and control of all lumber cut from the premises, until all matters in connection with the license are settled, and the sum due for the stumpage, and all paper given therefor, shall be fully paid.

The only question here involved is whether this permit, either before the severing of the timber began, or from time to time after it began, should have been recorded so as to give notice to innocent third parties, intending to purchase, that the timber, and lumber made therefrom, were subject to a lien. No claim could be made in favor of such record prior to the act of 1895, now found as Sec. 8, Chap. 114, R. S., 1916. Prior to the enactment of this statute, it had been clearly established in this State, that a permit need not be recorded, to enable the permittor to retain title to the lumber until the stumpage was paid and the conditions performed. *Fisher* v. *Sawyer*, 32 Maine, 28; *Crosby* v. *Redman, et al.*, 70 Maine, 56. See also *Putman* v. *White*, 76 Maine, 55, where the matter is fully discussed. Does Chap. 32 of the Public Laws of 1895 require the recording of a permit to give it validity against innocent third purchasers? The letter of the statute does not. A permit is not an agreement for the bargain and delivery of personal property. It is a license authorizing the permittee to convert real property into personal property. But the letter of the statute does not always control. Was it, then, the intention of the legislature that it should apply to a permit? This depends upon the construction of the statute. The Act of 1895 amended Sec. 5, Chap. 111, R. S., 1883. The provision found in 1883

was taken from 1871. Reference is made to R. S., 1871, as this statute has been construed. Sec. 5, Chap. 11, R. S., 1883, reads as follows: "No agreement that personal property bargained and delivered to another, for which a note is given, shall remain the property of the payee until the note is paid, is valid, unless it is made and signed as a part of the note; and no such agreement, although so made and signed in a note for more than thirty dollars, is valid, except as between the original parties to such agreement, unless it is recorded like mortgages of personal property." The statute of 1895 now found in R. S., Chap. 114, Sec. 8, reads as follows: "No agreement that personal property bargained and delivered to another, shall remain the property of the seller till paid for is valid unless the same is in writing and signed by the person to be bound thereby. And when so made  .  .  .  .  it shall not be valid except as between the original parties thereto unless it is recorded," etc. By a comparison of these statutes it will be seen that the subject matter is precisely the same in each, namely, "no agreement that personal property bargained and delivered to another," etc., and expressed in exactly the same words. The amendment did not change the subject matter. Nothing touching the "agreement" is found in the amendment which was not embraced in the original statute. But the original has been specifically construed. In *Crosby* v. *Redman*, 70 Maine, 56, the exact point here raised was specifically put in issue, in argument, and expressly considered by the court, who said: "Here is no 'bargain nor delivery' of personal property within R. S., (1871), Chap. 111, Sec. 5." If the permit did not come within the purview of "bargain and delivery" under the old statute, it does not come within the purview of "bargain and delivery" under the new statute, for, as above shown, the meaning of "bargain and delivery," the subject matter of · each statute is precisely the same in the one as in the other. The subject matter was not enlarged; that the agreement of bargain and delivery, should be recorded, to give it effect against innocent purchasers, was all that was sought to be accomplished by the amendment.

Nor do we think the legislature intended the amendment of 1895 to apply to a permit. The decisions which specifically exclude the application of the old statute to a permit were promulgated before the new statute was enacted. The legislature is presumed to have in mind the decisions of the court. If, therefore, the legislature in the

amendment had intended to change the application of these decisions, touching the recording of permits, they would have done so by the use of some apt language rather than to have left their intention to the uncertainty of implication.

*Judgment for plaintiffs for $1467.33
and interest from June 1, 1914.*