THE FORMAN SCHOOLS, INC. *v.* TOWN OF LITCHFIELD

MALTBIE, C. J., BROWN, JENNINGS, DICKENSON and INGLIS, JS.

2

Argued May 7—decided July 9, 1947

David Cramer, with whom was Clayton L. Blick, for the appellant (plaintiff).

Jonathan F. Ells and Lester W. Schaefer, for the appellee (defendant).

William C. Ward, amicus curiae.

MALTBIE, C. J.  The plaintiff appealed to the Court of Common Pleas from the action of the board of tax review of the defendant town in placing its property on the tax list, claiming that it was exempt, as belonging to a Connecticut corporation organized exclusively for educational purposes, under § 1163 of the General Statutes.  The trial court sustained the action of the board and the plaintiff has appealed to this court.

Previous to 1925, our statutes had for many years included a provision exempting from taxation "buildings or portions of buildings exclusively occupied as colleges, academies, churches or public schoolhouses," with an addition made in 1921 to include "the land on which they stand."  General Statutes,

Rev. 1888, § 3820; Rev 1902, § 2315; Rev. 1918, § 1160; Public Acts, 1921, Chap. 109. We considered the scope of the exemption in *Yale University* v. *New Haven* (1899), 71 Conn. 316, 42 A. 87; *Brunswick School* v. *Greenwich* (1914), 88 Conn. 241, 90 A. 801, and *Corbin* v. *Baldwin* (1917), 92 Conn. 99, 101 A. 834. The case of *Pomfret School* v. *Pomfret,* 105 Conn. 456, 136 A. 88, while not decided until 1927, arose under the act of 1921; and in it (p. 459) we formulated, upon the basis of the earlier decisions, certain conditions which must exist before the property of a school would be exempt: "First, is the property devoted to the public use; second, was the property so received and is it so held as to be dedicated to public benefit instead of to private advantage or gain?" In explanation of the significance of the first question, we said (p. 460): "The situation presented is not in accord with the conception of public education and public benefit which is at the root of the exemption claimed—the performance, though by private persons, of functions which otherwise would devolve upon the State or municipal government." We held that the school involved in that case did not meet this requirement because it was, like the school involved in *Brunswick School* v. *Greenwich,* supra, not a public institution offering instruction to all comers, but was in essence "a private school, calculated, manifestly, to interest only those who have the means and disposition to separate their children from the public schools." In *Female Academy* v. *Darien,* 108 Conn. 136, 142 A. 678, decided by us in 1928, but arising under the 1921 act, we reached a like conclusion.

In 1925, a special commission appointed under authority of the General Assembly particularly to

study exemptions from taxation made a report, and as a result an act was passed which, in place of the general exemption of colleges, academies and schools quoted above and certain other institutions, contained a provision which, although somewhat altered in detail by chapter 319 of the Public Acts of 1927, is essentially the same as that now found in § 1163 of the General Statutes. Subject to certain other sections of the statutes not relevant to the issue before us, subsection (7) exempted "the real property of, or held in trust for, a Connecticut corporation organized exclusively for scientific, educational, literary, historical or charitable purposes or for two or more such purposes and used exclusively for carrying out one or more of such purposes and the personal property of, or held in trust for, any such corporation, provided (a) any officer, member or employee thereof does not receive or at any future time shall not receive any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting one or more of such purposes or as proper beneficiary of its strictly charitable purposes, and provided (b)" that a quadrennial statement of the claimed exemption shall be made to the taxing officials.

Since the adoption of the 1927 act we have decided four cases directly involving claims by institutions that their property was exempt as devoted to educational purposes. In *Canterbury School* v. *New Milford,* 111 Conn. 203, 149 A. 685, we held the property of the plaintiff not exempt, solely because the requirements of proviso (a) in the statute were not met. In *Stamford Jewish Center, Inc.* v. *Stamford,* 117 Conn. 379, 385, 168 A. 5, we said, in holding the property of the plaintiff not exempt: "Considered

as a school, this is not a public one, 'offering instruction therein to all comers.' *Brunswick School* v. *Greenwich,* supra, 243. It does not discharge educational functions which would otherwise rest upon municipal or other governmental agencies, but membership in and the privileges of the corporation except voting privileges, are open to all persons of good moral character." In *Connecticut Junior Republic Assn.* v. *Litchfield,* 119 Conn. 106, 109, 174 A. 304, it was claimed that, as in the *Brunswick* case, the plaintiff was "a private school, calculated, manifestly, to interest only those who have the means and disposition to separate their children from the public schools"; but, in holding the plaintiff entitled to an exemption, we distinguished it from the schools involved in that case and the cases of the *Pomfret School* and the *Female Academy.* Finally, in *Edgewood School, Inc.* v. *Greenwich,* 131 Conn. 179, 38 A. 2d 792, in holding the plaintiff entitled to exemption, we said (p. 183) that its property was "sequestered for educational uses and neither it nor any person can secure any profit from its operations. This brings it squarely within the four corners of the statute. The only two requirements stated therein are fulfilled. The holdings and dicta . . . in cases decided both before and after the 1927 amendment do not require a contrary conclusion." Two of the judges dissented, substantially upon the ground that the school fell within the class of private schools held in the *Brunswick* case not to be entitled to an exemption.

In the cases decided by us under the statute as it stood before the 1927 amendments, the question was as to the institutions which the legislature intended to include in the general word "academy." As long

as the exemption was expressed in such a general word, it was our right and duty to inquire what institutions it was the intent of the General Assembly to include in that word; it was our conclusion that the General Assembly could not in reason have meant that every institution falling within the scope of the general terms of the statute should be entitled to an exemption, but that it must have intended the law to apply only to institutions having characteristics which would bring them within the purposes for which exemptions from taxation are ordinarily granted; and, accordingly, we construed the broad words of the statute to be inapplicable where those purposes were not being served. See *National Fireproofing Co.* v. *Huntington,* 81 Conn. 632, 633, 71 A. 911; *Dorman* v. *Carlson,* 106 Conn. 200, 203, 137 A. 749; *State* v. *Nelson,* 126 Conn. 412, 417, 11 A. 2d 856. We can properly presume that, when the act of 1927 was adopted, the General Assembly acted with knowledge of our previous decisions construing the former provision; *Stamford* v. *Stamford,* 107 Conn. 596, 606, 141 A. 891; and in this instance such a presumption gains great weight because the report of the special commission on tax exemptions, to which we have referred, contains quotations from our decisions in *Yale University* v. *New Haven,* supra, and *Corbin* v. *Baldwin,* supra, in which the two bases of exemption formulated in *Pomfret School* v. *Pomfret,* supra, are stated at length. The 1927 act codified the requirement that any institution coming within the terms of the provision, to be exempt, must be so constituted as to eliminate the possibility of private profit; but it made no mention of any requirement that such an institution should be so conducted as to assume some of the public burden of

education. In fact, the special commission on tax exemptions, discussing its recommendations for amending the statute, stated that one of its purposes was to confine the exemption to institutions where there was no possibility of private gain, but it made no mention of any requirement that to secure the exemption institutions must bear some portion of the public burden.

In omitting the previous general provision as to colleges, academies and public schools and in bringing them within the broad scope of "scientific, educational, literary, historical or charitable institutions," the act indicates clearly an intent to do away with any such test. See *Westport Bank & Trust Co. v. Fable*, 126 Conn. 665, 668, 13 A. 2d 862. This conclusion is fortified by the fact that in the subsection just preceding that which we are considering an exemption is granted as regards the property of volunteer fire companies if certain conditions are met, among them that the property is used "by the public in lieu of public property which would otherwise be required or authorized by any general statute or special act"; and, if the legislature intended a similar condition to apply to the property of a corporation organized exclusively for scientific, educational, literary or historical purposes, it would naturally have so stated. Reasons for omitting the requirement that a school to be exempt must lighten the burden of public taxation may be found in these circumstances: The general provision exempting the property of such corporations includes institutions as to which such a test would be inapplicable; the report of the special commission states that a law granting exemptions "should set up as nearly as possible plain and simple rules by which assessors could

promptly determine whether property is taxable or not," and it would be difficult to draw the line at the point where the education of Connecticut children in a school not public does in fact lighten the public burden.

For us to import into the law a requirement that a school, to be exempt, must not only come within the terms of the statute but must also appreciably relieve the state of the burden of educating the children within it would be to add a limitation which the General Assembly not only has not made but which it refused to make. When the General Assembly has undertaken to state definitely the requirements necessary to secure an exemption, we cannot read into them other requirements having no sanction in the language it has used. *Simmons* v. *Holcomb,* 98 Conn. 770, 775, 120 A. 510; *State* v. *Nelson,* supra, 416. In studying the various claims as to exemptions of schools and like institutions which have come before us, the conviction has grown upon us that it is our duty to give effect to the terms of the statute as it stands and that we have no justification for reading into it limitations finding no sanction in its language; if it is to be broadened or narrowed, it is for the General Assembly to take the necessary steps to that end. As we held in *Edgewood School, Inc.* v. *Greenwich,* supra, the statute specifies two conditions which must be met before a school is entitled to an exemption; it must be an "educational institution," and it must be so constituted that no person can make private gain from it except as specified in the law. If it meets these requirements it is entitled to an exemption.

The defendant's contention that to construe the act as we have done would make it invalid as in effect

a use of public funds for private purposes is without merit. Education in itself serves a public purpose. *Lyman* v. *Adorno,* 133 Conn. 511, 516, 52 A. 2d 702. "It is much too late to argue that legislation intended to facilitate the opportunity of children to get a secular education serves no public purpose." *Everson* v. *Board of Education of Ewing,* 330 U. S. 1, 7, 67 S. Ct. 504, 91 L. Ed. 472. Of the clause in question as it stood previous to the 1927 amendments, we have said that it "does not exempt any individuals from the burden of taxation that is common to all; it does not grant to one, particular privileges denied to all others; it declares that lands and buildings sequestered to certain public uses, i.e., taken out of the body of private property and devoted exclusively to the common good, from which no individual can derive any profit, are not taxable property. And this has been, not the exception, but the rule from the foundation of our government." *Yale University* v. *New Haven,* 71 Conn. 316, 329, 42 A. 87. This statement makes peculiarly apropos our statement in *Baker* v. *West Hartford,* 89 Conn. 394, 399, 94 A. 283, with reference to a statute which under certain conditions exempted tree plantations from taxation: "In deciding whether in a given case, the object for which taxes are assessed falls upon the one side or the other of this line of public use, courts must be governed mainly by the course and usage of the government, the objects for which taxes have been customarily and by long course of legislation levied, and what objects or purposes have been considered necessary to the support and for the proper use of the government, whether State or municipal. Whatever lawfully pertains to this and is sanctioned by time and the acquiescence of the people may well be held to belong

to the public use, and to be proper for the maintenance of good government, though this may not be the only criterion of rightful taxation." An exemption from taxation of property which is devoted exclusively to educational purposes and from which no individual can make a private gain is not invalid on the ground claimed.

It is unnecessary to consider at any length the facts involved in the case before us. Unattacked conclusions of the trial court are that the plaintiff was organized exclusively for educational purposes and that it met the express requirements of the statute under which it claimed exemption; but the court denied its claim on the ground that its property was not devoted to public use because it did not perform functions which otherwise would devolve upon the state or municipal government. This conclusion was based upon findings that the school was largely for boarding pupils, although it took a few day pupils; that its charges were relatively high; that it did not give much scholarship aid, and in bestowing that aid no preference was given to students from Connecticut; and that the larger number of pupils came from outside Connecticut and few came from the defendant town. As the plaintiff was found fully to comply with the requirements for exemption stated in the statute, it could not properly be denied relief on the ground taken by the trial court.

There is error, the judgment is set aside and the case is remanded with direction to sustain the plaintiff's appeal and order the board of tax review to strike the plaintiff's property from the tax list.

In this opinion JENNINGS and INGLIS, Js., concurred.

Brown, J. (dissenting). I am unable to agree with the conclusion of the majority or the reasoning upon which it rests. It is my judgment that there are three essentials to the exemption of an educational institution under § 1163(7): (1) It must be devoted to the public use. (2) It must be sequestered for educational uses. (3) Neither it nor any person can secure any profit from its operations. The first requisite involves "the conception of public education and public benefit which is at the root of the exemption claimed—the performance, though by private persons, of functions which otherwise devolve upon the State or municipal government"; *Pomfret School* v. *Pomfret,* 105 Conn. 456, 460, 136 A. 88; and necessarily excludes a private school which solely is "calculated, manifestly, to interest only those who have the means and disposition to separate their children from the public schools." *Brunswick School* v. *Greenwich,* 88 Conn. 241, 243, 90 A. 801. The majority opinion recognizes that this was the law as declared by this court until the recent decision by a divided court in the case of *Edgewood School, Inc.* v. *Greenwich,* 131 Conn. 179, 183, 38 A. 2d 792, when the majority held the first requisite above to be no longer essential to exemption.

By its opinion in the instant case the majority accepts the language used in that connection as authority for its present conclusion. This language, however, was not essential to that decision, and recognition that the result in that case was correct does not require an exemption in the present case, for the factual situation is materially different. There, as that opinion pointed out, the plaintiff was "organized to care for educationally exceptional and underprivileged children," and, accordingly, by ful-

filling that function it served the public interest by relieving the public schools of this "great burden and responsibility." Here, not only does the plaintiff provide no such public service but it is primarily a boarding school exacting a charge of $500 per year for any day pupil. During 1945–6, while Litchfield furnished education for 769 of its local pupils, but two in all, and they as day pupils, were cared for by the plaintiff with its hundred thousand dollar plant. It gives but little scholarship aid, with no preference to students from Connecticut, and a majority of its pupils come from outside of this state. Manifestly the plaintiff is a private school which is totally devoid of that devotion to the public use which distinguishes the *Edgewood School* case.

The majority opinion suggests further reasons for holding that under the present wording of § 1163, adopted by amendments enacted in 1925 and 1927, devotion to the public use is no longer essential to exemption. Chapter 109, § 1, of Public Acts, 1921, the statute construed in the *Pomfret School* case, exempted realty "exclusively occupied as colleges, academies, churches, public schoolhouses or infirmaries." The corresponding provision of § 1163(7) reads: "the real property of . . . a Connecticut corporation organized exclusively for scientific, educational, literary, historical or charitable purposes." A natural and obvious purpose of this change of wording was to simplify the language. Thus, the words "educational . . . purposes" in their context took the place of "colleges, academies . . . public schoolhouses"; and similarly "charitable purposes" took the place of "churches . . . or infirmaries" while "scientific [and] literary . . . purposes" supplanted "scientific and literary societies,"

which had been dealt with in a subsequent provision of the 1921 act. The full import of the change referred to was, in my opinion, this simplification rather than the expression of an intent to eliminate the devotion to the public use requirement, as so resourcefully argued by the majority. The legislature knew when it adopted these amendments that this court had repeatedly and without exception held this requirement to be essential to exemption under the 1921 act. The presumption is justified that the legislature substituted the summarizing words "educational . . . purposes" for "colleges, academies, . . . public schoolhouses" with the expectation and intention that the new wording should connote the continuance of this requirement. This court expressly so held in *Stamford Jewish Center, Inc.* v. *Stamford,* 117 Conn. 379, 385, 168 A. 5. Had so radical a change as its elimination been contemplated, it easily could and undoubtedly would have been expressly so provided. Instead, the amended statute "substantially re-enacts . . . the words of the previous" act, as in *Hoxie* v. *New York, N. H. & H. R. Co.,* 82 Conn. 352, 369, 73 A. 754. See 50 Am. Jur. 312, § 321. This history of the law is of importance in ascertaining the legislative intent. *Chambers* v. *Lowe,* 117 Conn. 624, 169 A. 912. It fortifies the conclusion that the change in the statute did not eliminate the first essential to exemption.

I am unable to follow the suggestion in the majority opinion that the use in the 1921 act of "the general word 'academy' " gave rise to a "right and duty" in this court to determine whether a devotion to the public use was essential to exemption thereunder which the employment of the more inclusive words "educational . . . purposes" in the present stat-

ute does not permit. The majority refers to the significance of the report to the legislature of the 1925 special commission to study exemptions from taxation. The content of that report, however, seems to me to make very clear that the legislature did not intend by the statute as amended to eliminate the first essential above referred to. This report, after reciting a recommended provision for exempting "educational . . . institutions," goes on to state (p. 31) that this clause includes all the classes of institutions covered by the clause, "exclusively occupied as colleges, academies . . . or infirmaries," in the 1921 law. The report states on page 28 that the commission's investigation had "disclosed several tax exempt institutions in this state, which pay dividends, and more where the form of organization makes private gain possible," contrary to the state's exemption policy. On the same page it also states that "The existing statute is amended in the following respects only." Then are enumerated seven items, one of which is the private gain provision, but no mention is made of eliminating the devotion to the public use requirement. In view of these statements, the inclusion in the amended act of the nonprofit limitation and the failure to incorporate the devotion to the public use requirement to my mind have no such significance as is suggested in the majority opinion.

The present wording of § 1163 became operative in 1927. On July 27, 1934, this court rendered its decision in *Connecticut Junior Republic Assn.* v. *Litchfield,* 119 Conn. 106, 174 A. 304, flatly holding devotion to the public use essential to exemption under subsection (7) of the statute. During the thirteen years which have since intervened, the leg-

islature has made no change in the statute. This is significant and strongly indicates that our interpretation of the statute by that decision was not violative of the intent which the legislature had expressed. The practicalities of the situation cogently suggest why this is so and why this court should not discard its construction of the statute which has had this acquiescent approval. To take an extreme illustration, suppose an expensive New York City girls' finishing school, open only to residents of that city, is transplanted to some impecunious country town in this state where it establishes a million dollar plant and is duly incorporated under our law with the required prohibition against profit. Should such a property be immune from taxation to provide the town with the money necessary to meet such burdens as affording fire protection, maintaining highways and providing for the education of its children?

It is my conclusion that, where, as in the case before us, this court's decisions have established the exemption requirements under this statute and these have been accepted by the taxing authorities, the courts and the legislature for so many years, any such radical modification as the majority decision effects should come by legislative enactment and not by the pronouncement of a change in judicial interpretation of the statute by this court.

For the foregoing reasons I conclude that there was no error.

DICKENSON, J. (dissenting). The majority opinion finds support in a literal interpretation of the statute, but so to construe it raises a doubt as to its constitutionality under article first, § 1, of the constitution of Connecticut, which provides ". . . that no man, or set of men are entitled to exclusive public

emoluments or privileges from the community." The opinion sanctions the use of public funds, through tax exemption, for the private education of a few when like education is furnished for all children in public schools, at public expense. The saving grace in *Edgewood School, Inc.* v. *Greenwich*, 131 Conn. 179, 38 A. 2d 792, on which the majority opinion largely relies for precedent, is that the Edgewood School served some public interest in providing necessary training for a type of pupil which the public schools were not adapted to give. There has been no change in the statute since that opinion was handed down and I see no justification for departing from it in principle.