A. Belanger & Sons, Inc. *vs.* Joseph M. Concannon Corporation & others.

Suffolk.   May 3, 1955. — July 1, 1955.

Present: Qua, C.J., Wilkins, Spalding, Williams, & Counihan, JJ.

*Public Works.   Housing.*

A materialman seeking the benefit of security by bond obtained by a housing authority from the contractor on a housing construction project pursuant to G. L. (Ter. Ed.) c. 149, § 29, as appearing in St. 1938, c. 361; G. L. (Ter. Ed.) c. 121, § 26V, as appearing in St. 1946, c. 574, § 1, properly filed his sworn statement of claim with the authority rather than with the treasurer of the county or the clerk of the town in which the authority was located.

Bill in equity, filed in the Superior Court on November 27, 1951.

The suit was heard by *Brogna*, J.

*Frank D. Branca, (Frank Mulready* with him,) for the defendant Peerless Casualty Company.

*James G. Fay,* for the plaintiff.

Counihan, J.   This is a bill in equity by the plaintiff, hereinafter called Belanger, against the Joseph M. Concannon Corporation, hereinafter called Concannon, the Peerless Casualty Company, hereinafter called Peerless, and the Stoughton Housing Authority, hereinafter called the authority.   Belanger was a subcontractor of Concannon which had a contract with the authority to build a State aided housing project in Stoughton.   Belanger furnished Concannon materials for this job.   Peerless was the surety on a statutory performance bond furnished by Concannon to the authority.   G. L. (Ter. Ed.) c. 121, § 26V, as appearing in St. 1946, c. 574, § 1, which incorporated by reference §§ 28 and 29 of G. L. (Ter. Ed.) c. 149.

It is undisputed that Belanger furnished materials to Concannon which were never paid for.   It is also undis-

puted that Belanger filed a sworn statement of its claim with the authority within the time required by law, and the judge so found.

A final decree was entered ordering Peerless to pay Belanger the sum of $2,087.51 for said materials with interest and costs. The bill was taken for confessed against Concannon and dismissed as to the authority. The case comes here upon an appeal by Peerless from the final decree. There was no error.

The only question before us is whether the filing of the sworn statement of claim with the authority was in compliance with the pertinent statutes. Chapter 121, § 26V, reads in part, "A housing authority shall be liable in contract or in tort in the same manner as a private corporation. . . . The real estate of a housing authority shall not be subject to liens under chapter two hundred and fifty-four [the general mechanics' lien statute], but the provisions of sections twenty-eight and twenty-nine of chapter one hundred and forty-nine shall be applicable to housing authorities." Section 29 of c. 149, as appearing in St. 1938, c. 361, reads in part, "Officers or agents who contract in behalf of any county, city or town for the construction . . . of public buildings . . . shall obtain sufficient security, by bond or otherwise, for payment by the contractor . . . for . . . materials used or employed in such construction . . . but in order to obtain the benefit of such security the claimant shall file in the office of the county treasurer or of the city or town clerk a sworn statement of his claim within sixty days after the claimant ceases to . . . furnish . . . materials . . . ." Chapter 121, § 26V, was presumably enacted because of the decision in *Johnson-Foster Co.* v. *D'Amore Construction Co.* 314 Mass. 416, which in substance held that § 29 of c. 149 relating to bonds for materials furnished was not applicable to housing authority contracts.

It may be of interest to note that by § 28 of c. 149, as appearing in St. 1948, c. 550, § 30, which relates to claims for unpaid labor on public works, the notice of claim must

be filed in the clerk's office of the city or town against which such right of action is asserted.

Peerless contends that the statement of claim should have been filed with a county treasurer or with the town clerk of Stoughton. By inference at least it seems to rely upon *Philip Carey Manuf. Co.* v. *Peerless Casualty Co.* 330 Mass. 319. But that case did not even remotely consider the question which now concerns us. It merely decided that, no sworn statement having been filed with anybody, the subcontractor could not secure the benefit of the statutory performance bond. We are of opinion that the contention of Peerless cannot be sustained.

No case has been brought to our attention and we have found none in which this precise question has been passed upon. In *Johnson-Foster Co.* v. *D'Amore Construction Co.* 314 Mass. 416, at page 419, it was said: "The statutes establishing housing authorities make it plain that such an authority, although organized by and in each city and town in coöperation with the State, is nevertheless, when organized, a complete corporate entity in itself, distinct from the municipal corporation within whose territory it is set up, and exercising its powers in its own independent right . . . . Its contracts are its own and are not those of the municipality." As we have said, this case held that housing authorities were not permitted to require a statutory performance bond. That decision indicated the clear distinction between the authority and any county or town. As we have already indicated, c. 121, § 26V, was obviously enacted to correct the situation relative to power of the authority to require statutory bonds and to make such bonds effective for the purpose for which they were given. See *Proprietors of the Cemetery of Mount Auburn* v. *Unemployment Compensation Commission,* 301 Mass. 211, 213. It would be a futile gesture to require the filing of a sworn statement with a county treasurer or town clerk. It is plain that the purpose of filing the sworn statement of claim is to give notice to those charged with disbursing funds on the contract, and that is to the authority itself.

A county treasurer or town clerk could not be expected to have knowledge of contracts entered into by the authority and would not know what to do with such sworn statements of claims if filed with either of them. See *Tower* v. *Miller*, 211 Mass. 113, 114.

It is a "canon of interpretation . . . that . . . [the words of a statute] are to be construed according to the common and approved usage of the language considered in connection with the cause of its enactment, the preëxisting state of the law, the mischief to be remedied and the main object to be accomplished." *Brown* v. *Robinson*, 275 Mass. 55, 57. See *Commonwealth* v. *Gardner*, 300 Mass. 372, where the court said at page 376, "It was said in *Somerset* v. *Dighton*, 12 Mass. 383, 384–385: 'in the exposition of statutes, such a construction should be given as will best effectuate the intention of the makers. In some cases, the letter of a statute may be restrained by an equitable construction; in others, enlarged; and, in others, the construction may be even contrary to the letter. For a case may be within the letter and not within the meaning of a statute.'"

In order that c. 121, § 26V, may be effectual for the purpose for which it was enacted and in view of preëxisting law as declared in the *D'Amore* case, we are of opinion that it must be construed so that the filing of the sworn statement of claim with the officers and agents of the corporate entity with which the contract was made is sufficient compliance.

> *Decree affirmed with costs of this*
> *appeal to the plaintiff.*