**REALCO SERVICES, INC.**

v.

**Raymond L. HALPERIN, State
Tax Assessor.***

Supreme Judicial Court of Maine.

April 7, 1976.

Perkins, Thompson, Hinckley, Thaxter & Keddy by James R. Flaker, D. Brock Hornby, Portland, for plaintiff.

Jerome S. Matus, Asst. Atty. Gen., Augusta, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

ARCHIBALD, Justice.

On report on an agreed statement of facts.

The plaintiff's complaint prayed for a declaratory judgment that the defendant

---

\* During the pendency of this case the initial defendant, Ernest H. Johnson, ceased to hold the office of State Tax Assessor. The substitution of the present State Tax Assessor, Raymond L. Halperin, as party defendant, is automatic. Rule 25(d)(1), M.R.C.P. *See Bud's Red & White Super Markets v. Halperin*, 351 A.2d 114, 116 n. 2.

was not authorized by the provisions of 36 M.R.S.A. § 1752(21) to assess a *use tax* on certain of the plaintiff's tangible personal property. On the facts of this case we conclude that the tax assessment was not authorized.

## FACTS

Realco Services, Inc. (Realco), is a foreign corporation with no established place of business in the State of Maine. It operates what is known as the National Railroad Trailer Pool (Pool), with which most of the major railroads in the United States and Canada are affiliated by contract. Realco purchases from the manufacturer a type of trailer, commonly known as a "piggyback" trailer, which can be loaded on a railroad flat car and moved into the stream of commerce, thus providing long haul transportation for shippers or receivers who do not ordinarily utilize railroad siding terminals. These trailers are not designed for general "over the road" usage but may be moved from a siding by motor carriers for the limited purpose of pick-up and delivery.

The various railroads affiliated with the Pool execute membership agreements under the terms of which their rights and obligations are carefully delineated. Both the Bangor and Aroostook and Maine Central Railroads became members of the Pool in 1962.

Under the terms of the pooling agreement Realco orders and purchases the trailers from the manufacturer and arranges for the railroad nearest the manufacturer to pick up the trailers, thereupon placing them in circulation for the benefit of all members of the Pool. Once in the hands of a railroad Realco ceases to exercise any further control over the movement of a given trailer unless and until it is ultimately returned to it at one of its so-called Geographic Pool Points, the nearest one to Maine being in Newark, New Jersey. Realco is paid a daily rental by the railroad having possession of a trailer at 11:59 p. m.

In addition to the pooling arrangement, participating railroads may enter into a subscription agreement, thus ensuring that an adequate supply of trailers is available to meet the demand. Under this arrangement each trailer is leased to a subscribing railroad and bears its markings. However, the railroad on whose line such a trailer happens to be at 11:59 p. m. of any given day is responsible for the rental regardless of the name that may appear on the trailer, the lessee railroad being responsible for daily rentals only when a trailer is on its line at 11:59 p. m. The agreement further provides that when an *empty* trailer comes into the possession of a railroad it becomes incumbent upon that railroad to route the trailer in the direction of the subscribing railroad, but any intervening railroad has the right to utilize the services of that particular trailer if it needs it at any point prior to its arrival on the line of the subscribing railroad. If the subscribing railroad has no further use for the trailer it may avoid daily rental by routing it to the Geographic Pool Point, although neither the Maine Central Railroad nor the Bangor and Aroostook Railroad has so returned any of the trailers here involved.

The Maine Central Railroad entered into such a lease in 1966 and the Bangor and Aroostook Railroad in 1968. Of the 250 trailers assigned to the Maine railroads, 210 found their way into the State of Maine within seventy-three days of the initial delivery from the manufacturer. Having once arrived in Maine, however, all of these were rerouted into the flow of interstate commerce within a short time and have remained in the flow of interstate commerce ever since, gravitating toward Maine when not in use but available to any member railroad in whose possession they came while thus en route.

The affidavits attached to the agreed statement establish that neither railroad has any motor carrier authority from the Interstate Commerce Commission or the Maine Public Utilities Commission to haul "piggyback" trailers "over the road" except

for specifically authorized pick-up and delivery. In fact, as these affidavits make clear, none of the trailers leased to either railroad was ever used for *intrastate* transportation.

Based on the purchase price of the 210 trailers the State Tax Assessor, on July 10, 1970, and by amendment on July 14, 1972, assessed against Realco a use tax in the sum of $54,329.91 plus interest of $6,997.84.

## LEGAL CONCLUSION

Although Realco has argued that the tax was assessed in violation of the State Tax Assessor's administrative interpretation of the relevant statute and, additionally, has argued that the tax was unconstitutional because it imposed an impermissible burden on interstate commerce, our analysis makes it unnecessary to reach either of these issues. Our conclusion that the defendant lacked authority to assess this particular tax is reached by considering the plaintiff's initial position, namely:

"Piggyback trailers used exclusively in interstate commerce and which pursuant thereto enter Maine temporarily from time to time are not encompassed in the statutory levy of a use tax upon the full purchase price of property producing rental income, when the statute specifically limits the levy to property *'located in this State.'*" (Emphasis supplied.)

Maine adopted a sales and use tax in 1951. P.L.1951, ch. 250, defined the word "use" as follows:

" 'Use' includes the exercise in this state of any right or power over tangible

personal property incident to its ownership when purchased by the user at retail sale."

By P.L.1965, ch. 361, the 102nd Legislature added the following to the above definition,

"including the derivation of income, whether received in money or in the form of other benefits, by a lessor from the rental of tangible personal property *located in this State.*" (Emphasis supplied.) 36 M.R.S.A. § 1752(21).

Since admittedly Realco owned the piggyback trailers and was a lessor thereof to both Maine railroads by virtue of the subscription agreements, it thus becomes critical in determining the validity of the use tax assessment to decide whether Realco exercised such right or power over these trailers as would bring its "use" within the statutory definition of that term.

■ This is the first occasion we have had to construe the 1965 amendment. In order that we may determine the legislative purpose in adopting the amendment,[1] it is appropriate to consider the relevant cases decided between 1951 and 1965. In so doing we merely adopt the well recognized canon of statutory construction that a legislature, in enacting a particular statute, would be guided by the past decisions of the highest court in its state. *Webber v. Granville Chase Company*, 117 Me. 150, 103 A. 13 (1918); *see also Wakem, Receiver v. Town of Van Buren*, 137 Me. 127, 15 A.2d 873 (1940); *Sacknoff v. Sacknoff*, 131 Me. 280, 161 A. 669 (1932). The gen-

---

1. Our examination of the legislative record of the 102nd Legislature has been counterproductive. The only comment concerning the proposed amendment as it proceeded through to final enactment was this:

"The Chair laid before the House the third tabled and today assigned matter:

Bill, 'An Act relating to Sales and Use Tax Liability of Lessors of Tangible Personal Property.' (S.P. 269) (L.D. 817)

Tabled—May 20, by . . . .

Pending—Passage to be Engrossed.

The SPEAKER: The Chair recognizes the gentleman from . . . .

[HOUSE MEMBER]: Mr. Speaker, Ladies and Gentlemen of the House: I have studied this bill and talked to Mr. Johnson, the State Tax Assessor, and I understand what they are trying to do here. It is still hazy in my mind, but I will move that we pass this to be engrossed.

Thereupon, the Bill was passed to be engrossed and sent to the Senate."
Legislative Record of the 102nd Legislature, Vol. II at 2562.

erally accepted principle is that in adopting particular legislation the enactors should be

"presumed to have had knowledge of existing domestic judicial decisions and to have enacted and amended statutes in the light of such decisions as have a direct bearing upon them."

*In re Simoni's Estate,* 220 Cal.App.2d 339, 33 Cal.Rptr. 845, 847 (1963); *Ashenbrenner v. Department of Labor & Industries,* 62 Wash.2d 22, 380 P.2d 730 (Wash.1963); *A. Belanger & Sons v. Joseph M. Concannon Corp.,* 333 Mass. 22, 127 N.E.2d 670 (1955); *Forman Schools v. Town of Litchfield,* 134 Conn. 1, 54 A.2d 710 (1947); *State v. Thomas,* 35 Ohio App. 250, 172 N.E. 397 (1930); *City of Stamford v. Town of Stamford,* 107 Conn. 596, 141 A. 891 (1928).

In *Trimount Co. v. Johnson,* 152 Me. 109, 124 A.2d 753 (1956), a non-resident corporation had executed bona fide leases for certain personal property which became physically located and used only in the State of Maine. Since the lessor thereafter exercised no "right or power" over the leased personalty, our Court unanimously concluded that this property was not subject to the use tax since "the petitioner has not exercised in this State any right or power over the property within the statutory definition of 'use'." 152 Me. at 113, 124 A.2d at 756.

*South Shoe Machine Co. v. Johnson,* 159 Me. 74, 188 A.2d 353 (1963), involved a use tax assessed against a non-resident lessor of shoe machinery which was used within the State of Maine by resident lessees. Adopting the *Trimount* rationale, the Court held that the mere collection of rent was not a sufficient exercise of right or power over the leased property to support the assessment of a use tax.

In *Automatic Canteen Co. v. Johnson,* 159 Me. 189, 190 A.2d 734 (1963), the Maine Court upheld a use tax assessed against a non-resident lessor of vending machines which were physically situated in Maine. Since there was evidence of acts by the lessor within the State of Maine having to do with the inspection, repair and maintenance of these machines, a majority of the Court distinguished between the holdings in the *Trimount Co.* and *South Shoe Machine Co.* cases, concluding that the lessor, incident to its ownership, had exercised a sufficient right and power in Maine over these machines to obligate itself to payment of a use tax.

From this trilogy there emerged the rather clear rule that the mere receipt of rentals was not a sufficient exercise of right or power over tangible personal property to subject a non-resident lessor to the obligation to pay a use tax thereon. However, in all three cases two common facts existed, namely, the tangible personal property was physically present and being used to facilitate a purely Maine oriented business or manufacture and had lost any transient characteristic. The 1965 amendment, therefore, had as its purpose a broadening of the definition of "use" to include derivation of income by a lessor in the form of rental provided, however, that the "tangible personal property [was] located in this State."

With this background we now must consider whether the Legislature, by using the expression "located in this State," intended any meaning beyond that ordinarily given to such language.

The word "locate" is not necessarily a word of art. Webster defines it as "to set or establish in a particular spot." Webster's New International Dictionary, 3rd ed. We are constrained by 1 M.R.S.A. § 72(3) to give it such common meaning unless that construction is inconsistent with the plain meaning of the statute. *Statler Industries, Inc. v. Board of Environ. Pro.,* 333 A.2d 703 (Me.1975). As we have pointed out, the past problem with the interpretation of the use tax statute had not been with where the property was located but with whether the lessor's collection of rentals was such an exercise of

right or power over the property as would support a use tax assessment.

 Although *Hunnewell Trucking, Inc. v. Johnson,* 157 Me. 338, 172 A.2d 732 (1961), and *Commercial Leasing Inc. v. Johnson,* 160 Me. 32, 197 A.2d 323 (1964), were primarily concerned with whether the assessment of a use tax was constitutional, the cases do furnish a definitional insight which the Legislature would be presumed to have considered when incorporating the expression "located in this State" in the 1965 amendment. "Located in this State" can readily be equated with *coming to rest* in the State after importation and with *becoming part of the common mass of property* within the State, such concepts being derivable from these two cases. Conversely, in *Hanbro, Inc. v. Johnson,* 158 Me. 180, 181 A.2d 249 (1962), personal property that was never physically present in Maine, although owned by a Maine corporation and leased by it to a nonresident, was held non-taxable primarily because it was not physically situated within the State of Maine.

With this background it seems self-evident that the Legisature intended the words "located in this State" to relate to personal property which, in fact, had come to rest within the State with a corresponding loss of all transient characteristics. This concept is entirely consistent with the ordinary and common meaning of the word "locate," leading us to conclude that the Legislature intended to give no particular or unique meaning to that word.

▮ Reverting to the facts, the leasing agreement by its own terms anticipated nothing but a temporory presence of these trailers in the State of Maine. It was not contemplated by either railroad or Realco that these trailers were to be used in intrastate commerce. They were routed into Maine for the purely transient purpose of reshipment to destinations outside the State, which was the underlying purpose of the pooling arrangement.

On the agreed facts these trailers, having no established locus in Maine, did not acquire a taxable status within the statutory definition of "use"; and, therefore, we declare the tax assessment to be invalid.

The entry is:

Remanded to the Superior Court for entry of a declaratory judgment pursuant to this opinion.

DELAHANTY, J., sat at argument but did not particiate further in the case.

All Justices concurring.