HUNNEWELL TRUCKING, INC.
*vs.*
ERNEST H. JOHNSON, STATE TAX ASSESSOR
STATE OF MAINE

Kennebec.   Opinion, July 1, 1961.

*Hough & Guy,* for plaintiff.

*John W. Benoit,*
*Ralph W. Farris, Sr.,* for State.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

DUBORD, J.   This is an appeal, filed under the provisions of Section 33, Chapter 17, R. S., 1954 (as amended), and M.R.C.P. 80 (B), from the imposition of a use tax by the State Tax Assessor upon personal property owned by the appellant.

At the time of the imposition of the tax, the appellant was engaged in interstate commerce by motor truck between the States of Maine, New Hampshire, Massachusetts, and Connecticut. The pertinent statutes involved are certain portions of § 2, and § 4 (as amended), and § 10 I, Chapter 17, R. S., 1954.

Section 4 (as amended), reads as follows:

> "Sec. 4. **Use tax.** A tax is imposed on the storage, use or other consumption in this state of tangible personal property, purchased at retail sale on and after July 1, 1957, at the rate of 3% of the sale price. Every person so storing, using or otherwise consuming is liable for the tax until he has paid the same or has taken a receipt from his seller, thereto duly authorized by the assessor, showing that the seller has collected the sales or use tax, in which case the seller shall be liable for it."

The words "storage" and "use" are defined in § 2, Chapter 17, as follows:

> " 'Storage' includes any keeping or retention in this state for any purpose, except subsequent use outside of this state, of tangible personal property purchased at retail sale."

> " 'Use' includes the exercise in this state of any right or power over tangible personal property incident to its ownership when purchased by the user at retail sale."

Section 10 I, reads as follows:

> "Sec. 10. **Exemptions.** No tax on sales, storage or use shall be collected upon or in connection with:

> "I. **Exemptions by constitutional provisions.** Sales which this state is prohibited from taxing under the constitution or laws of the United States or under the constitution of this state."

According to the agreed statement of facts the appellant purchased outside of the State of Maine, and brought in to the state certain materials and supplies (not including fuel) for use upon its motor trucks. More specifically these materials and supplies included motor parts, tires and other materials all to be used on the motor vehicle trucks by the appellant in its business in interstate commerce. All these materials, parts and supplies were placed in the Portland, Maine terminal of the appellant for the sole and exclusive purpose of being affixed to the motor trucks and used in the normal course of the business of the appellant. It is stipulated that no sales tax was paid upon these materials in the state or states of purchase.

Relying upon the provisions of the statutes previously referred to, the State Tax Assessor imposed a use tax against the appellant. From this assessment, the appellant filed an appeal claiming that the imposition of this tax constitutes an unconstitutional burden upon the interstate operations of the appellant.

The State Tax Assessor made the assessment upon the theory that the goods upon which the tax was assessed had come to rest in the State of Maine after importation therein, and had become part of the common mass of property within the State of Maine. *Henneford et al.* v. *Silas Mason Co., Inc., et al.*, 300 U. S. 577, 57 S. Ct. 524.

A study of the most recent decisions of the Supreme Court of the United States upon the point indicates that there is adequate precedent for the action of the State Tax Assessor.

In the case of *Nashville, Chattanooga, St. Louis Railway* v. *Wallace* (1933), 288 U. S. 249, 53 S. Ct. 345, an interstate rail carrier purchased large quantities of gasoline outside the State of Tennessee and brought it into the state in its tank cars unloading it into storage tanks where it remained

until withdrawn and used to operate the company's engines in interstate commerce. The storage was a preliminary step to use. The State of Tennessee levied an excise tax on the storage of the gasoline. The court said:

"The gasoline, upon being unloaded and stored, ceased to be a subject of transportation in interstate commerce, and lost its immunity as such from state taxation.

"The fact that the oil was, in the ordinary course of appellant's business, later withdrawn from storage for use, some within and some without the state, part of it thus becoming again the subject of interstate transportation, did not affect the power of the state to tax it all before that transportation commenced. Neither the appellant, the shippers, nor the carrier, at the time of the shipment of the gasoline from points of origin, arranged a destination for any part of the oil other than appellant's storage tanks in Tennessee.

"We cannot say that the tax is a forbidden burden on interstate commerce because appellant uses the gasoline, subsequent to the incidence of the tax, as an instrument of interstate commerce.

"It cannot be doubted that, when the gasoline came to rest in storage, the state was as free to tax it, notwithstanding its prospective use as an instrument of interstate commerce, as it was to tax appellant's right of way, rolling stock or other instruments of interstate commerce, which are subject to local property taxes.

"Hence there can be no valid objection to the taxation of the exercise of any right or power incident to appellant's ownership of the gasoline, which falls short of a tax directly imposed on its use in interstate commerce, deemed forbidden in *Helson* v. *Kentucky*, 279 U. S. 245. Here the tax is imposed on the successive exercise of two of those powers, the storage and withdrawal from storage of the gasoline. Both powers are com-

pletely exercised before use of the gasoline in interstate commerce begins. The tax imposed upon their exercise is therefore not one imposed on the use of the gasoline as an instrument of commerce, and the burden of it is too indirect and remote from the function of interstate commerce itself to transgress constitutional limitations."

A basic case on the applicability of a use tax on transactions involving interstate commerce is *Southern Pacific Company* v. *Gallagher* (1939), 306 U. S. 167, 59 S. Ct. 389. In that case the State of California imposed a use tax upon materials used by the Southern Pacific Railroad Company in its interstate operations. The material to which the use tax applied had been purchased outside the state and brought into California in interstate commerce. The material was stored only for such a period as was necessary before it could be installed into the interstate transportation facilities of the company and there begin its function as a part of the interstate operations. The court considered two lines of authority noting as follows:

"There is agreement upon the principle involved. Appellant (railroad company) states that an excise tax imposed directly upon the privilege of using instrumentalities in carrying on interstate transportation is a direct and unconstitutional burden on commerce. Appellees do not dispute the premise but contend that the tax is on intrastate storage and use. - - - -. If we conclude retention and installation, under the circumstances here developed, are intrastate taxable events, viewed apart from commerce, we must still inquire whether taxes laid upon them are not, in effect, upon commerce, and forbidden.

"Two lines of authority aid in considering the effect of this tax on commerce. The first makes it quite clear that a state tax upon the privilege of operating in, or upon carrying on, interstate commerce is invalid.

"The second line of authority supports the view that use and storage as defined in the California act are taxable intrastate events, separate and apart from interstate commerce.

"The principle illustrated by the Helson case forbids a tax upon commerce or consumption in commerce. The Wallace case and precedents analogous to it permits state taxation of events preliminary to interstate commerce. The validity of any application of a taxing act depends upon a classification of the facts in the light of these theories.

". . . State taxes upon national commerce or its incidents do not depend for their validity upon a choice of words but upon the choice of the thing taxed. It is true, the increased cost to the interstate operator from a tax on installation is the same as from a tax on consumption or operation. This is not significant. The prohibited burden upon commerce between the states is created by state interference with that commerce, a matter distinct from the expense of doing business. A discrimination against it, or a tax on its operations as such, is an interference. A tax on property or upon a taxable event in the state, apart from operation, does not interfere."

Certain of the items purchased out of state by Southern Pacific Company had been ordered "under specifications suitable only for utilization in the transportation facilities and installed immediately on arrival at the California destination." Of this the court said:

"If articles so handled are deemed to have reached the end of their interstate transit upon 'use or storage', no further inquiry is necessary as to the rest of the articles which are subjected to a retention, by comparison, farther removed from interstate commerce. We think there was a taxable moment when the former had reached the end of their interstate transportation and had not begun to be consumed in interstate operation. At

that moment, the tax on storage and use—retention and exercise of a right of ownership, respectively—was effective. The interstate movement was complete. The interstate consumption had not begun." *Southern Pacific Company* v. *Gallagher, supra.*

It is of significance and importance to note that the California Use Tax Act which was under interpretation contained clauses very similar to those in the Maine Sales and Use Tax Law.

See also *Pacific Telephone & Telegraph Company* v. *Gallagher,* 306 U. S. 182, 59 S. Ct. 396.

See Annotation in 129 A. L. R. 222, 224, wherein it is stated:

"In their application to tangible personal property carried into the state and there brought to rest permanently, or merely halted for a moment before resuming its interstate course or character, taxes upon the privilege of use, storage, or consumption within the state have generally been held not to impose an unconstitutional burden on interstate operations or instrumentalities."

See also Annotation in 171 A. L. R. 283, relating to cases where immunity from the imposition of taxes is lost by reason of a break in transit. The general rule is quoted on page 284 as follows:

"It is universally agreed that personal property actually in transit in interstate commerce is protected by the commerce clause of the Federal Constitution from local taxation in the states through which it passes. Where, however, the interstate transit is broken or interrupted in a particular state, the question arises whether the property may thereupon be subjected to local taxation therein. In this situation the principle has been adopted by the Supreme Court of the United States and adhered to by the lower Federal courts

and the courts of the various states that if the break in the interstate journey was caused by the exigencies or conveniences of the chosen means of transportation, considerations of the safety of the goods during transit, or natural causes over which the taxpayer has no control, the continuity of the transit remains unimpaired, and the immunity of the goods from state or local taxation is consequently unaffected; but if the interruption in the journey occurred for purposes connected with the business convenience or profit of the taxpayer, or the owner of the property, then the continuity of the transit must be regarded as having been so disturbed as to destroy the immunity of the property from local taxation."

On page 292, we find the following statement:

"In many instances it has been held, in the light of the particular statutes involved and facts and circumstances shown, that a break in the movement of an interstate shipment of personal property occurred through reasons related to the convenience or business profit of the taxpayer or owner, with the result that the immunity of the goods from taxation in the state where such interruption occurred was lost."

In the case before us the break in transit was not caused by exigencies over which the taxpayer had no control, but was purely for the convenience or business profit of the appellant.

Thus, the State Tax Assessor was correct in ruling that immunity from taxation was lost.

Appellant relies strongly upon the decision in *Helson, et al.* v. *Kentucky, supra.* A study of this decision indicates that the facts in the Helson case are not at all like those in the case before us. In the *Helson* case, the State of Kentucky had a law which imposed a tax on the use of gasoline within the state. Appellants were an Illinois corporation operating a ferry between Kentucky and Illinois.

Gasoline was purchased in Illinois and used up on appellant's ferries. It was conceded that 75% of the gasoline was actually consumed within the limits of the State of Kentucky. The court ruled that the imposition of the tax was in violation of the commerce clause. However, it would appear that the gasoline upon which the tax was imposed never came to rest within the limits of the State of Kentucky and thus the tax was a direct impost on interstate commerce.

Other cases cited by the appellant are either not in point or else considered as in effect disapproved by *Southern Pacific Company* v. *Gallagher* and *Pacific Telephone & Telegraph Company* v. *Gallagher, supra,* as well as numerous other decisions which can be found listed in the Annotation in 129 A. L. R. 222, 227.

It is our considered opinion that the State Tax Assessor has properly administered and applied the pertinent sections of the statutes and that the assessment is valid.

The entry will be:

*Appeal dismissed.*