AUTOMATIC CANTEEN COMPANY OF AMERICA

*vs.*

ERNEST H. JOHNSON, STATE TAX ASSESSOR

Cumberland.   Opinion, May 10, 1963.

*Berman, Berman, Wernick, and Flaherty,*
  *by Sidney W. Wernick and John J. Flaherty,*
                                        for Plaintiff.

*Ralph W. Farris, Sr.,*
*John W. Benoit, Asst. Attys. Genl.,* for Defendant.

SITTING: WILLIAMSON, C. J., SULLIVAN, SIDDALL, JJ. DU-
   BORD, J., sat at argument, but retired before rendition
   of decision. TAPLEY, AND WEBBER, JJ., dissenting.

WILLIAMSON, C. J.   This appeal from a use tax assessed
by the State Tax Assessor is before us on report from the
Superior Court.   Sales & Use Tax Law, R. S., c. 17, §§ 4,
33; Rule 80 B (a) (d) Maine Rules of Civil Procedure.

The tax assessed amounted with penalties and interest
to $14,896.87, covering the period from May 1, 1955 to

April 30, 1961. The pertinent provisions of R. S., c. 17 are:

> "**Sec. 4. Use Tax.**—A tax is imposed on the storage, use or other consumption in this state of tangible personal property, purchased at retail sale . . . "

> "**Sec. 2. Definitions.**—. . . 'Use' includes the exercise in this state of any right or power over tangible personal property incident to its ownership when purchased by the user at retail sale."

The main issue is whether the appellant has exercised within the State any right or power over its vending machines incident to its ownership. If so, a tax is imposed on such use. We have no concern with "storage" or "other consumption" under Sec. 4. Further, the appellant, the purchaser of the machines outside the State, has paid no sales or use tax thereon in any other jurisdiction. Sec. 12. The appellant also asserts the unconstitutionality of the statute.

The appellant is engaged in the business of selling, as a wholesaler, merchandise such as candy, chewing gum, cigarettes, soft drinks, etc. to be dispensed in automatic vending machines known as canteens. The vending machines which dispense the merchandise are owned by the appellant and are leased to distributors who purchase from the appellant the merchandise which is dispensed by the machines.

Within Maine the appellant does not own, lease or maintain any office, place of distribution or any other type of place of business or have any regular employees or agents. It conducts an interstate business by entering into franchises and lease agreements creating independent contractor distributors.

The affidavit of the appellant filed under Sec. 33 stating its reasons of appeal, reads in part, as follows:

"That the reasons of appeal by the plaintiff, Automatic Canteen Company of America which are, at the same time, its reasons for bringing the complaint to initiate said appeal, are as follows:

A.   Under the Maine Sales and Use Tax law, as amended, no tax of any kind, whether sales tax or use tax, is imposed upon the petitioner, Automatic Canteen Company of America, by virtue of the circumstances of the petitioner's activities regarding distributors in Maine, said circumstances being, essentially, the following:

1.   Automatic Canteen Company of America, a Delaware corporation, hereinafter sometimes called The Company, is engaged in the business, *inter alia,* of leasing coin-operated vending machines.

2.   Certain franchised operators, who operate within the State of Maine, and who are herein called Distributors, use vending machines which are leased to them by The Company.

3.   Under the terms of their lease agreements with The Company, the Distributors, in return for the payment of rentals, are entitled to use said vending machines in the operation of their trade, to wit: the selling of goods at retail through vending machines.

(4)   The vending machines leased by The Company to its Maine Distributors are purchased by The Company from without Maine and shipped by of *(sic.)* for The Company to the Distributors in Maine.

(5)   The aforesaid lease agreements are entered into and executed in The Company's home office in Chicago, Illinois. Rental payments are remitted directly to Chicago by The Distributors.

(6)   Once the vending machines have been directed to the Distributors by The Company, the Distributors are free to place said machines in any location, subject only to geographic limita-

tions, of their choosing, without the direction or other action upon the part of The Company.

(7) The operation of the leased vending machines is under the complete control of the Distributor, who is responsible only for the loss or damage (over ordinary wear and tear) of the machines.

(8) The Company exercises no right or power over the vending machines within the State of Maine.

(9) Under substantially the same facts as the above, it was held in *Trimount Coin Machine Co. vs. Johnson,* 124 A. 2d 753, that the lessor was not liable for the use tax on the machines leased to operators in Maine. Hence, in the present case, there is no tax liability and, the above mentioned use tax, interest and penalties are not validly or properly assessed and are illegal.

In B, C, and D, after first stating that "under all the facts and circumstances that are relevant and applicable to the operations of the Automatic Canteen Company of America, to the extent that they relate to the State of Maine (the use tax, interest, and penalties) assessed against (the appellant) . . ." the reason is stated in these words: In B "are illegal, unauthorized and unwarranted;" In C "are not authorized by any of the provisions of the Maine Sales and Use Tax law, and are, therefore, illegal and invalid";

In D "constitute a violation of the Constitution of the United States and, in particular, the Commerce Clause of the United States Constitution, in that the Tax Assessor of the State of Maine is purporting to assess and impose a tax upon interstate commerce, thus exercising a prerogative which the Federal Constitution reserves exclusively to the Federal Congress and denies to the various States."

The lease provides:

"11. Additional Consideration. The initial and period rental charges herein provided for Can-

teens, as set forth in Exhibit 'A' attached hereto, do not constitute adequate consideration for the use of such Canteens by the Distributor, and it is understood that the Company is dependent in a large measure on income which it may receive from the sale of merchandise through its Canteens."

"23.   Cancellation for Inefficient Operations.   The Distributor agrees to operate the business herein described within the above territory in an efficient manner and to use and lease from the Company within such territory that number of Canteens which should be used within that territory under efficient and aggressive management . . . "

Mr. Arnold, Assistant Treasurer of Automatic Canteen Company, testified both in person and through affidavit. We quote in part from the affidavit:

"That while it is true that representatives of Automatic Canteen have visited its franchised distributors, located within the State of Maine upon diverse occasions, the purpose of such visits was *not* the inspection of the vending machines leased by Automatic Canteen but rather a review of the entire method of operation conducted by said franchised distributors and the offering of constructive criticism with the view of increasing the efficiency of the distributors, to the end that their total business would be increased thereby and that they would therefore wish to lease additional vending machines from Automatic Canteen.   Specifically, the representatives of Automatic Canteen review with the distributor such items as his methods of record keeping, his frequency of mechanical service and his administrative procedures.   These visits do not operate in any way to relieve the distributor of his primary responsibility for the maintenance and care of the vending machines leased to him by Automatic Canteen."

The witness also testified in substance that the machines were shipped into the State usually by common carrier;

that the rentals were paid by check sent to Chicago; that the merchandise which was used in the machines was ordered by the distributor from Chicago, by letter or by the use of an order form; that the Chicago office of Automatic Canteen then sent the orders to the suppliers or manufacturers of the products which were then shipped directly from them to the distributors, and that the relationship of the Automatic Canteen Company to its distributors is that of a candy and cigarette wholesaler. Counsel for the appellant, in speaking of the visits mentioned in the appellant's affidavit, asked:

"MR. WERNICK: How frequent have those visits mentioned in your affidavit been?

"THE WITNESS: Ordinarily about once a year.

"Q. Do you know how many men have come in?

\* \* \* \* \* \* \* \* \* \*

"THE WITNESS: I don't know for sure. Two, I believe.

"MR. WERNICK: Is that two on each of the yearly visits?

"A. Two on each of the visits.

"Q. Now, are you familiar with what those men do when they come into Maine?

"A. In a general way, yes.

"Q. Directing your attention particularly to any records that they make, would you please explain what those records are and what the purpose of them is?

"A. They review the operations of a particular distributor with respect to his service, his stockroom, his business methods, prepares recommendations to correct any faults that he might have observed in the distributor's business operations, submits the recommendations to an official of the company who generally will write to the distributor involved and send him a copy of the individual's report.

"Q. And what is the purpose of this report?

"A. The purpose is to see that the distributor is

maintaining good business practices so that his business will improve and, consequently, Automatic's through its sale of products to the distributor will also increase.

"Q. When you say 'sale of products,' are you referring to the business of selling the merchandise?

"A. The merchandise, yes.

"Q. In the machines?

"A. In the machines.

"Q. Do these men who come in have anything to do with the repair of the machines?

"A. No, they do not.

"Q. Who handles all repairs to the machines themselves?

"A. The distributor's employees.

"Q. Are these men who come in on behalf of Automatic Canteen in any way concerned with the location of the machines?

"A. No.

"Q. Are the records which they prepare in any way directed to ascertaining where those machines are, or is that immaterial to them?

"A. That is immaterial to them.

"Q. Are the records in any way concerned with the information as to how much repair work is done by the distributor with regard to the machines? I think that can be answered 'Yes' or 'No' first.

"A. No.

"Q. Do you wish to explain that further?

"A. Yes. The individuals who come in observe the condition of the machines and recommend to the particular distributor that he should keep them in better shape, or if some of them are inoperative he puts that in his report to the effect that his maintenance has been sloppy, or something like that.

"Q. And what is the purpose of that information?

"A. We want clean, working machines on location to increase the sale of candy, cigarettes and

so on, and to protect the name of Automatic Canteen Company of America. We don't like to have dirty, unsightly vendors out.

"Q. But it in no way pertains, as I understand it, to any interest you have in repairing machines?

"A. No.

"Q. That is the primary responsibility of the distributor, is that correct?

"A. Yes.

"Q. And you have nothing to do with the repair of the machines, or the maintenance of them?

"A. None.

"Q. I think that is all."

The appellant urges that the instant case cannot be distinguished from *Trimount Coin Machine Co.* v. *Johnson,* 152 Me. 109, 124 A. (2nd) 753. With this view we do not agree. In *Trimount* the court said, at p 113:

"From the agreed statement it appears that the petitioner has done nothing with respect to the machine within the State of Maine either before or since making the lease. We conclude, therefore, that the petitioner has not exercised in this State any right or power over the property within the statutory definition of 'use.'

"Our decision is based upon and limited strictly to the facts set forth in the agreed statement. At what point a lessor or owner does exercise a right or power in this State under the statute we do not here consider or determine, except that there has been no such exercise in this State on the facts before us."

Here we have evidence of *acts* by the appellant within Maine—facts not present in *Trimount* or in *South Shoe Machine Co., Inc.* v. *Johnson, State Tax Assessor,* 158 Me. 74, 188 A. (2nd) 353. The employees of the appellant Automatic Canteen Company of America coming into Maine were interested in and had duties in connection with the canteens as well as the merchandise sold therein. The

appellant has a vital interest in the efficient operation of the silent salesmen. The acts of its employees in Maine bore upon whether the lessee or distributor was carrying out the terms of the lease.

We conclude that the appellant has exercised such right and power over its vending machines incident to its ownership that it is subject to the use tax.

In light of the use of the vending machines within the State, the tax does not violate the Federal Constitution. *Hunnewell Trucking, Inc.* v. *Johnson, State Tax Assessor,* 157 Me. 338, 172 A. (2nd) 732.

The tax was lawfully assessed. The entry will be

> *Remanded for entry of decision denying the appeal.*

TAPLEY, J.

DISSENTING OPINION

I do not concur with the reasoning or the result in the majority opinion. I do agree, however, that the principles of law applicable to the instant case are set forth in *Trimount Coin Machine Co.* v. *Johnson,* 152 Me. 109 and *South Shoe Machine Co., Inc.* v. *Johnson,* 158 Me. 74, 188 A (2nd) 353.

The majority opinion correctly presents the issue:

> "The main issue is whether the appellant has exercised within the State any right or power over its vending machines incident to its ownership."

The majority of the court finds:

> "The employees of the appellant Automatic Canteen Company of America coming into Maine were interested in and had duties in connection

with the canteens as well as the merchandise sold therein. The appellant has a vital interest in the efficient operation of the silent salesmen. The acts of its employees in Maine bore upon whether the lessee or distributor was carrying out the terms of the lease."

Thus the majority conclude:

" - - - - that the appellant has exercised such right and power over its vending machines incident to its ownership that it is subject to the use tax."

"The use and possession of the property in Maine in its entirety is, and at all times has been, in the lessee or customer by virtue of the lease. - - - - - There is, of course, no use tax arising under any theory of the Act from the purchase of the machine outside of Maine or *from the lease written in Massachusetts*. Until the machine reached the State of Maine there was no action whatsoever within the State with respect to the property owned by the petitioner." (Emphasis supplied.) *Trimount Coin Machine Co.* v. *Johnson, supra.*

According to the terms of the lease in the case at bar, the distributor is required to install, inspect, repair, operate and maintain the vending machines. He has control over the machines until he breaches his contractual responsibility and the lessor seeks to enforce its rights under the lease.

"The mere existence of certain rights or powers in the owner-lessor reserved by the lease would not suffice to subject him to taxation if he failed to or refrained from exercising any such right or power in Maine." *South Shoe Machine Co., Inc.* v. *Johnson, supra.*

The representatives of the company, according to the undisputed evidence, were present in Maine for the prime purpose of reviewing and reporting the overall canteen business of the distributor in the sale of the products.

While here they observed the condition of the machines because sloppy maintenance could affect the sale of merchandise.

In my opinion, when representatives of the company came to Maine to review the merchandising business conducted by the distributor in the sale of its products and, while present in Maine, they, incidental to the main purpose of their visit, made visual observation of the vending machines, they did not by so doing exercise any right or power over them.

According to my view of the facts, in light of the applicable statutory language, I am led to the conclusion the Legislature never intended that a mere visual observation of the machines, unaccompanied by some affirmative act taken in accordance with the terms of the lease, would be an exercise of right or power incident to their ownership.

I would sustain the appeal.

Webber, J., joins in this opinion.