[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The issue presented in this action is whether the plaintiff, Grace N' Vessels of Christ Ministries, Inc., is entitled, pursuant to General Statutes § 12-81b and § 12-119 and Danbury Code § 18-20, to be reimbursed for back taxes paid on property the plaintiff acquired in April, 1994, and whether certain other property owned by the plaintiff should have been considered exempt from taxation from the date of acquisition until October, 1996, when the two pieces of property merged. Further, there is an issue of whether the plaintiff's claim is barred by the statute of limitations prescribed in General Statutes § 12-119.
The plaintiff, Grace N' Vessels of Christ Ministries, Inc. ("Grace"), is a nonprofit corporation organized for charitable purposes. On April 8, 1994, Grace purchased property by quitclaim deed at 20 Briar Ridge Road, Danbury (Lot #C15010) and at 13 and 14 Briar Ridge Road, Danbury (Lot #C15015). Grace's congregational building, which is used for services, is located on Lot #C15010, which property was granted a tax exemption by the Danbury tax assessor on April 7, 1994. The assessor did not grant an exemption for Lot #C15015, however, until October 1, 1996, at which time the two lots were merged into one. The parties dispute the actual use of Lot #C15015 prior to the 1996 merger. Grace claims that the lot was used for outdoor prayer, walks, volleyball and children's games. Danbury argues that only a small undetermined portion of the property was used for occasional prayer and volleyball games, and that the property was wooded and difficult to access until sometime in 1995.
On or about March 28, 1995, Danbury billed Grace for real property taxes, including interest and lien fees, for the October, 1992 and October, 1993 grand lists. On or about May 1, 1995, Grace, under protest, made payment to Danbury of $26,611.03. After that payment, Danbury continued to place tax charges on Lot #C15015 for the grand lists of 1993, 1994 and 1995, resulting in a current demand by Danbury of $21,229.
On August 3, 1995, Grace filed an application, under General Statutes §§ 12-81b and 12-119 and Danbury Code § 18-20, for reimbursement for the taxes it has already paid and for exemption from taxation for Lot #C15015 for the period from April 8, 1994 to October 1, 1996. On May 1, 1997, Danbury filed an amended answer in which it included the special defense that Grace's application was not filed within the one-year statute of limitations provided for in General Statutes § 12-119. CT Page 8793
In its trial and posttrial memoranda, Grace argues that it is entitled to reimbursement under General Statutes § 12-81b and Danbury Code § 18-20 because "such sections unambiguously provide not only that the exemption is from the date of acquisition, but in addition that a tax-exempt organization shall be reimbursed for any taxes paid after the date of acquisition." Moreover, Grace contends that General Statutes § 12-81b was passed to ease the burdens that an earlier statute, General Statutes § 12-89, imposed on charitable organizations. With regard to Lot #C15015, Grace argues that the uses made of the lot should be considered charitable under the meaning of General Statutes § 12-81 (7), that no profit was ever made from the lot, and as such the lot is entitled to an exemption.[1]
In its posttrial and reply memoranda, Danbury argues, inter alia, that the exemption granted in General Statutes § 12-81
(7) and 12-81b applies to the assessment of the property rather than to the bills for previously assessed years. As such, Danbury argues that the assessor properly exempted Grace as of the date of acquisition, giving Grace a tax exemption from the period of April 7, 1994 to October 1, 1994, and thereafter, and also properly charged Grace for taxes that were owing before April 7, 1994. As to the exempt status of Lot #C15015, Danbury argues that, under General Statutes § 12-88, the lot would have been exempt only if it contained buildings or other improvements used for charitable purposes, or if such improvements were in the process of being constructed. Danbury contends that no such improvements exist on the property, and that Grace failed to offer sufficient evidence of charitable use of the lot.
With regard to its special defense, Danbury argues that any action under General Statutes § 12-119 must be brought within one year of the challenged assessments, in this case those of October 1, 1992 and October 1, 1993, and that since Grace did not file its application until August 3, 1995, Grace should be time-barred. Grace argues that the time limitation should run from the date it was notified by the assessor of its tax liability, March 28, 1995, and that it filed its application for reimbursement fewer than five months later. Grace's final claim is that the one-year limit applies only to "evaluations for purpose of taxation," not claims of illegal taxation.
General Statutes § 12-119 provides in pertinent part: "[w]hen it is claimed that a tax has been laid on property not CT Page 8794 taxable . . . or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof . . . may . . . make application for relief to the superior court . . . . Such application may be made within one year from the date as of which the property was last evaluated for purposes of taxation . . . ." "General Statutes . . . § 12-119 limit[s] to a short period the time within which the property owner can seek relief under [it], and the purpose of this is undoubtedly to prevent delays in the ultimate determination of the amounts a municipality can collect as taxes." (Internal quotation marks omitted.) Farmingtonv. Dowling, 26 Conn. App. 545, 550, 602 A.2d 1047 (1992).
Danbury correctly argues that the limiting period in §12-119 bars many of Grace's claims. Further, Grace's argument that the time limitation applies only to "evaluations for purposes of taxation" and not to claims of illegal taxation is unavailing for two reasons. First, because the time limitation language in § 12-119 applies to the entire statute, the only way the language would not apply to Grace's claim is if Grace had not brought its claim under the correct statute. "[Section]12-119 requires an allegation that something more than mere valuation is at issue." (Internal quotation marks omitted.)Tyler's Cove Assn. Inc. v. Middlebury, 44 Conn. App. 517, 526. Second, the Supreme Court has expressly stated that "[w]e held inNorwich I that § 12-119 effectively established a statute of limitations of one year from the valuation date within which an illegal . . . assessment can be challenged." Norwich v. Lebanon,200 Conn. 697, 706, 513 A.2d 77 (1986).
Moreover, the time limitation cannot run, as Grace argues, from the date it received its tax bill. "`The date as of which the property was last evaluated for purposes of taxation' under § 12-119 was construed to mean the last annual assessment date, not the last revaluation date . . . ." Sitaras v. EastHartford, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 561341 (March 31, 1997, Aronson, J.), citing Humiston v. Southbury, Superior Court, judicial district of Waterbury at Waterbury, Docket No. 133244 January 16, 1997, Pellegrino, J.). In a similar case, Mazur v. Colchester,
Superior Court, judicial district of New London at New London, Docket No. 519380 (January 11, 1993, Hurley, J.), the plaintiffs alleged that they had not received notice of a reassessment of CT Page 8795 their property until ten months after the reassessment took effect. The plaintiffs in that case brought an action under §12-119 within one year of receiving such notice, but the court held that such action was untimely because "notice of the revaluation is not the triggering event for the appeal period under General Statutes § 12-119." Mazur v. Colchester, supra.
Here, the dates of the assessments that Grace is challenging for Lot #C15010 are October 1, 1992 and October 1, 1993. Since Grace did not file its application for reimbursement until August 3, 1995, more than one year from either of those dates, Grace's claims with respect to Lot #C15010 are time barred. In addition, the claims against the assessments for October 1, 1992 and October 1, 1993, for Lot #C15015 are also time barred.
Even if Grace's application with respect to Lot #C15010 were not time barred, Grace would not be entitled to reimbursement for the back taxes owed on that property. Danbury Code § 18-20, which was enacted pursuant to General Statutes § 12-81b
provides: "[t]he City of Danbury hereby adopts the provisions of Section 12-81b of the Connecticut General Statutes relating to the effective date of tax exemptions for certain organizations. Accordingly, the property tax exemption authorized by any of subdivisions (7) to (16), inclusive, of section 12-81 shall be effective as of the date of acquisition of the property to which the exemption applies. The tax-exempt organization shall be reimbursed for any tax paid by it for a period subsequent to said date and shall also be reimbursed for any tax paid by the prior owner for a period subsequent to the date of such acquisition for which such tax-exempt organization reimbursed the prior owner upon the transfer of title to such property."[2]
General Statutes § 12-89 provides in pertinent part that "any property acquired between assessment dates by any tax-exempt organization shall first become exempt on the tax list next succeeding the date of acquisition." The clear language of this statute indicates that, under ordinary circumstances, an organization shall not be considered exempt from taxation until the first of October following the date the organization acquired the property. As Grace argues, however, General Statutes §12-81b modifies this rule by allowing municipalities to provide that exemptions from taxation will become effective for charitable and certain other organizations on the date of acquisition, and that such organizations shall be reimbursed for any taxes paid for a period subsequent to the date of CT Page 8796 acquisition. Danbury adopted this modification in Danbury Code § 18-20.
"[A] basic tenet of statutory construction is that when a statute . . . is clear and unambiguous, [generally] there is no room for construction." (Internal quotation marks omitted.)Mattatuck Museum-Mattatuck Historical Society v. Administrator,238 Conn. 273, 279, 679 A.2d 347 (1996). Here, the language of General Statutes § 12-81b and Danbury Code § 18-20 clearly provides that exemption will occur as of the date of acquisition and not as of the tax list preceding the date of acquisition, as Grace suggests. "We will not impute to the legislature an intent that is not apparent from unambiguous statutory language in the absence of a compelling reason to do so." Home Ins. Co. v. Aetna Life Casualty Co., 235 Conn. 185,195, 663 A.2d 1001 (1995).
In keeping with the overall meaning of General Statutes §12-81b and Danbury Code § 18-20, the language providing for a refund to a tax-exempt organization for taxes paid "for a period subsequent to" the date of acquisition refers to taxes accrued and owed past that date, not taxes that happen to have been paid past that date. "[E]xemptions are matters of legislative grace and are to be construed strictly against the taxpayer."Rich-Taubman Associates v. Commissioner of Revenue Services,236 Conn. 613, 620, 674 A.2d 805 (1996). As such, the statutes may not be construed to support Grace's argument that a tax-exempt organization shall be reimbursed for any tax paid by it. The plaintiff, therefore, is not entitled to a full reimbursement for the taxes it has paid for the grand lists of 1992 and 1993, for Lot #C15010.
The only remaining claims to be addressed are those Grace has brought challenging the assessments for October 1, 1994 and October 1, 1995, for Lot #C15015, which claims were brought timely. Grace argues that this lot should have been assessed as exempt from taxation because it was used for charitable purposes during the entire period in question. "[W]hether the property for which an exemption is claimed is used exclusively for one of the required purposes must be determined from the facts . . . . The conclusion in each case is necessarily governed by the specific facts in the individual case." (Citations omitted; internal quotation marks omitted.) Red Top, Inc. v. Board of Tax Review,181 Conn. 343, 354, 435 A.2d 364 (1980). "It is also well settled that the burden of proving entitlement to a claimed tax exemption CT Page 8797 rests upon the party claiming the exemption." (Internal quotation marks omitted.) United Church of Christ v. West Hartford,206 Conn. 711, 719, 539 A.2d 573 (1988).
Under the facts presented, Grace has failed to meet its burden of showing that it is entitled to an exemption for Lot #C15015 for the period from October 1, 1994 to October 1, 1995. General Statutes § 12-81 (7) exempts from taxation "[s]ubject to the provisions of . . . 12-88, the real property of . . . a corporation organized exclusively for . . . charitable purposes . . . ." General Statutes § 12-88 provides in pertinent part: "[r]eal property belonging to . . . any organization mentioned in subdivision (7) . . . of section 12-81, which real property is so held for one or more of the purposes stated in the applicable subdivision, and from which real property no rents, profits or income are derived, shall be exempt from taxation though not in actual use therefor by reason of the absence of suitable buildings and improvements thereon, if the construction of such buildings or improvements is in progress."
Because the facts as proved demonstrate that Lot #C15015 has no buildings or improvements suitable for use for charitable purposes, either completed or in progress, Grace has failed to meet the requirements of § 12-88. As such, Grace is not entitled to an exemption for Lot #C15015 for the period in question.
The application is denied.
Mihalakos, J.