[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, The Fanny J. Crosby Memorial, Inc., brings this appeal in a five count amended complaint filed March 31, 2001, which spans the grand lists of the City of Bridgeport from October 1, 1996 up to and including October 1, 2000. In each of the five counts, the plaintiff alleges that the assessment by the City's assessor of the subject property located at 1078-1090 Fairfield Avenue in Bridgeport was "grossly excessive, disproportionate and unlawful." The plaintiff further alleges in each count that the subject property qualified for tax exempt status under General Statutes § 12-81 (7) during each of the grand list years at issue. The plaintiff further alleges in paragraph 6 of the first count that "[t]he applicant or his attorney or agent duly appealed to the Board of Tax Review of the town claiming to be aggrieved by this action of the assessors and offered to be sworn and answer all questions concerning the property but the Board made no changes in the valuations." In paragraph 6 of the second, third, fourth and fifth counts, the plaintiff alleges: "Pursuant to Section 12-118 [now 12-117a] of the Connecticut General Statutes, the applicant has the right to add this count . . . without having to appear before the Board of Tax Review." The defendant, City of Bridgeport, in its answer to the plaintiff's original complaint, denied that the assessment of the subject property was grossly excessive, disproportionate and unlawful. The City also denied the allegation in paragraph 6 of the first count of the plaintiff's original complaint that the plaintiff appealed to the Board of Tax Review.
In its brief, the City points out that the plaintiff introduced no evidence to support its allegation that it appealed to the Board of Tax Review, now known as the Board of Assessment Appeals, and therefore cannot show that it is an aggrieved party.
General Statutes § 12-89 provides that the board of assessors of each town "shall inspect the [tax exempt statements] filed with it and required by §§ 12-81 and 12-87 from scientific, educational, literary, historical, charitable, agricultural and' cemetery organizations, shall determine what part, if any, of the property claimed CT Page 11259 to be exempt by the organization shall be in fact exempt and shall place a valuation upon all such property, if any as is found to be taxable. . . . Any organization filing a tax-exempt statement, aggrieved at the action of the assessor or board of assessors, may appeal, within the time prescribed by law for such appeals, to the board of assessment appeals."
In claiming a tax exemption for property used for educational or charitable purposes, the property owner must file a statement on the first day of November every four years with the assessor of the town where the property is located. General Statutes § 12-81 (7). Section12-89 requires the assessor or board of assessors to inspect the statement submitted by the property owner seeking a tax exemption and determine if the property should be exempt. Section 12-89 empowers the assessor to grant an exemption from property taxes based upon the submission of the statement. If the assessor rejects the application for a tax exemption, the "organization filing a tax-exempt statement, aggrieved at the action of the assessor or board of assessors, may appeal, within the time prescribed by law for such appeals, to the board of assessment appeals." General Statutes § 12-89. If the board of assessment appeals sustains the assessor's rejection of the application for a tax exemption, the property owner may appeal the board's decision "within two months from the time of such action" to the superior court in the judicial district in which the property is located. General Statutes § 12-89. As in valuation appeals under § 12-117a, the legislature has provided a statutory system for a taxpayer to challenge the action of the assessor in denying a request for a property tax exemption. Cf. CarolManagement Corp. v. Board of Tax Review, 228 Conn. 23, 30, 633 A.2d 1368
(1993), citing Second Stone Ridge Cooperative Corp. v. Bridgeport,220 Conn. 335, 339-40, 597 A.2d 326 (1991). See also President andFellows of Harvard College v. Ledyard, 32 Conn. Sup. 139, 144, 343 A.2d 649
(1975). This statutory system mandates that a taxpayer who is dissatisfied with the denial of an exemption claim must first appeal to the board of assessment appeals. General Statutes § 12-89; seeEdgewood School, Inc. v. Greenwich, 131 Conn. 179, 183-84, 38 A.2d 792
(1944).
In its post trial brief, the City argues that the plaintiff did not sustain its burden of proving that it first appealed the assessor's denial of its exemption request to the board of assessment appeals. The only evidence introduced at trial by the plaintiff was a Connecticut Tax Exempt Return, which is required to be filed every four years to maintain an exemption. General Statutes § 12-81 (7). However, the Tax Exempt Form the plaintiff introduced into evidence was dated September 16, 1998, after the commencement of this action. CT Page 11260
As stated above, the plaintiff has alleged in its amended complaint that it appealed the assessor's denial of its application for an exemption to the board of tax review claiming to be aggrieved by the actions of the assessor, but that the board made no change in its property valuation.
Attached to the plaintiff's post trial brief and labeled "exhibit one" is a copy of a Connecticut Tax Exempt Return dated September 16, 1993 reciting that "[r]ooms in building located on parcel at 1078-90 Fairfield Avenue are rented to tenants of corporation's home for aged." Attached to the plaintiff's post trial brief and labeled "exhibit two" is a copy of a letter from a City property tax auditor to the plaintiff's president dated March 7, 1997 stating that the application for an exemption was denied because the properties at 1078-90 Fairfield Avenue and 44 Sherwood Avenue are used for housing, and the General Statutes specifically disallow exempt status for property used for such purposes. Also attached to the plaintiff's post trial brief as "exhibit three"is a copy of the plaintiff's appeal to the board of assessment appeals for the grand list of 1996. On the appeal form, the plaintiff describes the property being appealed, 1078-90 Fairfield Avenue, as an "Elderly care facility." Attached to the plaintiff's brief as "exhibit four" is a "Notice of Decision" stating "Appeal denied." Finally, attached as "exhibit five" is a copy of a page of a legislative history from a July 21, 1975 veto session of the Senate reporting remarks of Senator Schneller that "this bill would remove all doubt that a low cost or subsidized housing project of a non-profit charitable organization cannot be considered a charitable exemption."
We note that the plaintiff's documentation of its appeal before the board of assessment appeals and the decision of the board was not presented during the course of the trial but rather, attached to the plaintiff's post trial brief. We further note that present in the file is a joint trial management report dated February 4, 1999 signed by both parties, which does not raise the procedural issue that no appeal was taken to the board of assessment appeals. The parties agreed that the issues in dispute were "[t]he nature of the use and occupation by the Plaintiff and the nature of the Plaintiff's tax exempt status." The joint trial management report further acknowledges that the plaintiff is entitled to a de novo review of the actions of "the Board of Tax Review and Tax Assessor, and is entitled to such relief as equity allows including a decree determining that the Plaintiff's property is exempt from property tax."
The City did not object to the attachments to the plaintiff's post trial brief. Given the presence of the joint trial management report in the file, which does not mention the issue raised by the City in its post CT Page 11261 trial brief, and the attachments to the plaintiff's brief, which have not been objected to by the City, we find that it is proper to consider the information contained in these documents. We therefore find that the plaintiff is entitled to pursue this de novo appeal to the superior court because it did appeal to the board of assessment appeals, and the board denied the appeal.
The plaintiff was founded in the 1920s to provide enlightened care of the elderly. The plaintiff was created for charitable purposes in 1920 and was treated by the City as tax exempt property from 1920 to 1996 when the assessor deemed the use of the property to be for residential use by the elderly and therefore not exempt. The plaintiff is a recognized 501 (c)(3) federal tax exempt organization. In October of 1996, the Bridgeport Rescue Mission ("Mission") undertook to manage and operate the facilities at the subject property. On December 12, 1996, the plaintiff and the Mission entered into a formal agreement in which the Mission gained control of and managed the facilities at the subject property. The Mission is a religious, charitable, and educational organization created in 1993. It received federal tax exempt status in 1994 from the Internal Revenue Service. The Mission operates a mobile soup kitchen in various locations in the City. The soup kitchen at the subject property came into existence in 1998. The Mission also operates a program for the homeless as well as care for the elderly residents living at the subject property as of the time the Mission began its operation of the plaintiff's facility. In 1996, the plaintiff had approximately fourteen elderly people living on the premises. The elderly residents paid a modest rent. Presently, there are three elderly residents on the premises, who do not pay rent. There are twelve rooms in the building used as bedrooms for the elderly or transient people in need. In 1996, programs were run for the elderly without cost to them. The Mission maintains a one year program for substance abusers. Presently, there are about thirty-five people in this program who live on the premises. Activities include day classes, meetings and prayer programs. There are seven staff persons on the premises and numerous volunteers who come to the Mission to do maintenance, cleaning and conduct services for the residents. All of the activities of the Mission took place after the October 1, 1996 grand list date.
The plaintiff filed a tax exempt return form dated September 16, 1993 to the assessor in support of its claim for an exemption. The form recited that the purpose of the organization was "[t]o provide a home for aged men and women." The form further recited that "[r]ooms in building located on parcel at 1078-90 Fairfield Avenue are rented to tenants of corporation's home for aged."
The reason that the assessor denied the plaintiff tax exempt status was CT Page 11262 stated in the auditor's letter of March 7, 1997: "The information you have provided indicate that the subject properties . . . are used for housing. Connecticut General Statutes specifically disallow exempt status for property used for such purposes. Consequently, your application for exempt status is denied."
General Statutes § 12-81 (7), which governs the plaintiff's tax exemption request, does not allow an exemption because property is used for housing. The pertinent part of § 12-81 (7) recites, "[o]n and after July 1, 1967, housing subsidized, in whole or in part, by federal, state or local government and housing for persons or families of low and moderate income shall not constitute a charitable purpose under this section."
"Under our statutes, there are three requirements for a tax exemption. The property must belong to or be held in a trust for an organization exempt from taxation under the provisions of General Statutes § 12-81; it must be held for one of the purposes stated in that statute's list of exemptions; and it must produce no rent, profits or income." UnitedChurch of Christ v. West Hartford, 206 Conn. 711, 718, 539 A.2d 523
(1988).
In the present case, the plaintiff's Articles of Association provide in Article II that "[t]he purposes for which said corporation is organized are the following, to wit: To provide for aged men and women, whether married or single, a comfortable, happy residence in Bridgeport, Connecticut, where they may pass their declining years among congenial companions and have necessary care." Article VII of the plaintiff's bylaws authorizes the matron employed by the board of directors to receive rent from paying guests, and to pay the bills of the home. The only reference to charity appears in Article IV (b) of the Articles of Association which provide that upon the dissolution of the corporation, the net assets shall be distributed to a charitable organization.
We are not being asked to pass upon the merits of the Mission as a charitable organization, but rather whether the plaintiff, on October 1, 1996, and annually thereafter, was entitled to a tax exemption pursuant to § 12-81 (7). We conclude that it is not.
Nothing in the Articles of Association or the by-laws of the corporation provide for any financial qualification. No restriction or limitation of wealth or income is considered. Although the home may presently be operated for low income elderly, there is nothing in the Articles of Association or the by-laws that would restrict the use of the home to the poor, sick, or the infirm. Cf. United Church of Christ v.West Hartford, supra, 206 Conn. 718. In United Church of Christ, the CT Page 11263 Supreme Court surveyed other jurisdictions that considered the issue of tax exemptions for housing the elderly. The Supreme Court followed the majority of jurisdictions that found such housing not to be exempt from taxation because some payments were required by the elderly and no legal commitment was made to provide housing to those unable to pay. Id., 724-25. That is the case here.
"It is a settled rule of law that statutes which exempt from taxation are to be strictly construed against the party claiming an exemption. . . . Exemptions, no matter how meritorious, are of grace, and must be strictly construed. They embrace only what is strictly within their terms." (Citations omitted; internal quotation marks omitted.) United Church of Christ v. West Hartford, supra,206 Conn. 718. The burden of proving entitlement to the claimed tax exemption rests upon the plaintiff. Id., 719.
The plaintiff has failed to sustain its burden to show that it comes within the conditions contained within § 12-81 (7). In fact, §12-81 (7) specifically provides that "housing for persons or families of low and moderate income shall not constitute a charitable purpose under this section." This fact, plus the charging of rent, even though the rents charged are not sufficient to maintain the home, support our finding that the plaintiff is not entitled to a tax exemption under § 12-81 (7).
Accordingly, judgment may enter in favor of the City dismissing this appeal without costs to either party.
Arnold W. Aronson Judge Trial Referee