## ISAIAH 61:1, INC. *v.* CITY OF BRIDGEPORT

Superior Court Judicial District of Fairfield at Bridgeport—
File No. CV00-0376079S

Memorandum filed October 2, 2002*

*Carron & Fink,* for the plaintiff.

*Bridgeport city attorney,* for the defendant.

HON. ARNOLD W. ARONSON, JUDGE TRIAL REF-
EREE. The issue in this municipal tax appeal is whether
the real and personal property of the plaintiff, Isaiah
61:1, Inc. (Isaiah), qualifies for a tax exemption under
General Statutes § 12-81 (7), which exempts from taxa-
tion property used exclusively for charitable purposes,
but not where the property is subsidized by the state
for housing or used for rental income.

Isaiah is a nonprofit corporation organized under the
laws of the state of Connecticut on April 24, 1982. Isaiah
has been recognized by the Internal Revenue Service
under 26 U.S.C. § 501 (c) (3) of the Internal Revenue
Code as a tax exempt organization since 1983 and,
therefore, is exempt from Connecticut sales and use
taxes.

---

*An appeal to the Appellate Court was filed November 6, 2002. The docket
number is AC 23669.

Isaiah purchased the subject property at 120 Clinton Avenue, Bridgeport, in 1995. At that time the property was a virtual shell, requiring substantial rehabilitation. Isaiah completed rehabilitation of the property in 1998 and, thereafter, used it as a halfway house. The subject property contains three floors and has been licensed by the defendant city of Bridgeport as a rooming house. The first floor contains a living room, dining room, staff office and a large commercial kitchen. The second floor contains a common bathroom and five bedrooms. The third floor contains one bathroom and two bedrooms. The residential capacity of the house is fourteen. The property is operated by Isaiah as a halfway house in conjunction with two other halfway houses in Bridgeport. Isaiah has a contractual relationship with the department of correction (department) under which the department provides clients to Isaiah. The clients are inmates who are completing their sentences of incarceration at correctional facilities operated by the state. Inmates participate in Isaiah's program by application and interview. If accepted by Isaiah, the clients, all men, must live at Isaiah House for three to six months. The inmates are not free to choose where they will live while they are in the Isaiah program. Staff members are present at Isaiah House twenty-four hours a day, seven days a week. No staff member resides there. If an Isaiah client violates a rule of the program, the client is dropped from the program and returned to the correctional facility.

All Isaiah clients are required to seek employment as well as participate in vocational and family counseling, drug and substance abuse counseling, anger management training, spiritual guidance and other types of support groups designed to enable the clients to reenter the community as productive, stable citizens upon com-

pletion of their sentences. Clients, if employed, are required to contribute to the cost of their incarceration by paying rent. The amount of the rent is determined by the amount of pay earned by the client. The minimum rent is $10 per week and the maximum rent is $80 per week. If a client is unemployed, the client remains in the program, but is not required to pay rent. Whereas the purpose of the department is confinement, the purpose of Isaiah, in operating the halfway houses, is to reintroduce the clients back into society as self-sustaining, productive individuals. The payment of rent by a client is one facet of this reintroduction into society.

Isaiah is a nonprofit charitable organization operating with a volunteer board of directors and a salaried staff, including an executive director, administrative assistant, assistant program and facilities directors, case managers and senior case managers. The staff provides twenty-four hour coverage for the three halfway houses in Bridgeport.

Ninety percent of the funding for the operation of the three halfway houses comes from a contractual arrangement with the department. Approximately 1 percent of the funding comes from private donations and the balance of the funding comes from the rental payments made by the clients. In 2001, Isaiah received $1,043,460 from the department for all of the living spaces at the three halfway houses. During this same period, Isaiah received $95,972 as rent from the clients at all three facilities. In 1999, 120 Clinton Avenue produced $14,750 in rent. In 2000, 120 Clinton Avenue produced $33,516 in rent, and, in 2001, 120 Clinton Avenue produced $33,177 in rental payments from clients. Of the total cost of the operation of the three halfway houses, 80 percent of the total cost is for staffing.

General Statutes §§ 12-81 (7)[1] and 12-88[2] create an exemption for the real and personal property of Isaiah located at 120 Clinton Avenue, unless the property is used for housing that is subsidized by the state of Connecticut, or the property has rental income.

Our Supreme Court in *United Church of Christ* v. *West Hartford*, 206 Conn. 711, 718, 539 A.2d 523 (1988) delineated the three requirements for a tax exemption under § 12-81 (7): "[t]he property must belong to or be held in a trust for an organization exempt from taxation . . . it must be held for one of the purposes stated in [the] statute's list of exemptions; and it must produce no rent, profits or income."

[1] General Statutes § 12-81 provides in relevant part: "Exemptions. The following-described property shall be exempt from taxation . . . (7) Property used for scientific, educational, literary, historical or charitable purposes. Exception. Subject to the provisions of sections 12-87 and 12-88, the real property of, or held in trust for, a corporation organized exclusively for scientific, educational, literary, historical or charitable purposes or for two or more such purposes and used exclusively for carrying out one or more of such purposes and the personal property of, or held in trust for, any such corporation, provided (A) any officer, member or employee thereof does not receive or at any future time shall not receive any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting one or more of such purposes or as proper beneficiary of its strictly charitable purposes, and provide (B) in 1965, and quadrennially thereafter, a statement shall be filed on or before the first day of November with the assessor or board of assessors of any town, consolidated town and city or consolidated town and borough, in which any of its property claimed to be exempt is situated. . . . On or after July 1, 1967, housing subsidized, in whole or in part, by federal, state or local government and housing for persons or families of low and moderate income shall not constitute a charitable purpose under this section."

[2] General Statutes § 12-88 provides in relevant part: "When property otherwise taxable may be completely or partially exempted. Real property belonging to, or held in trust for, any organization mentioned in subdivision (7) . . . of section 12-81, which real property is so held for one or more of the purposes stated in the applicable subdivision, and from which real property no rents, profits or income are derived, shall be exempt from taxation . . . ."

Isaiah argues that it meets these three requirements. First, Isaiah claims that it is a charitable organization and its property at 120 Clinton Avenue is used exclusively for charitable purposes. Second, Isaiah argues that the so-called "rent" it collects from its clients is not really rent but rather a "weekly fee" or "room and board," and that its commitment to the department to provide services and housing to all persons admitted to Isaiah, regardless of whether they pay rent, takes the payment of "rent" by the clients out of the term "rent" as used in §§ 12-81 (7) and 12-88.

Although Isaiah's clients are required to pay "rent" as part of their rehabilitation program, the rent that the clients do pay is not for use and occupancy of the premises, but, rather, a requirement for the client to be committed to the program. It is the department that, in a sense, undertakes to lease the halfway house and the staff to provide a program in which inmates, about to be released from a correctional facility, may be reintroduced back into society. Isaiah's clients are not truly tenants, but, rather, are subject to the care and control of the department. The arrangement between the department and Isaiah confirms this in that a recalcitrant client cannot remain on the premises but will be returned to the correctional facility to serve out his remaining term of incarceration.

This court is guided in the resolution of the present case by the decision of our Supreme Court in *Hartford Hospital* v. *Hartford*, 160 Conn. 370, 279 A.2d 561 (1971). In that case, Hartford Hospital owned an apartment building in close proximity to the hospital itself and rented apartments in that building to staff members. The court in *Hartford Hospital* concluded that the exclusiveness of the property's use for hospital purposes was not impaired by the fact that the plaintiff

charged rent for occupancy of the apartment building, and, therefore, the property qualified for the tax exemption for hospitals under § 12-81 (16) and under § 12-88. Id., 378. The court in *Hartford Hospital* construed the legislative intent of § 12-88 to mean that where property used for charitable purposes has rental income, the rental income must be used exclusively for that charitable purpose and no other. Id., 376–77. It is the use of the rental income, not the fact that rent is charged, that determines whether the exemption under § 12-81 (7) applies. Id., 377. This court concludes that the "rent" received by Isaiah, whether in the form of payment from its clients or payment from the department, is in furtherance of the charitable purpose of Isaiah in operating halfway houses in its program of providing inmates an orderly transition into society from a life of confinement.

Accordingly, judgment may enter in favor of Isaiah sustaining its appeal without costs to either party.