## GIRL SCOUTS, CT TRAILS COUNCIL, INC. *v.* TOWN OF EAST HAVEN

Superior Court, Judicial District of New Britain—File No. CV00-0501889S

Memorandum filed November 25, 2002

*Wiggin & Dana,* for the plaintiff.

*Lynch, Traub, Keefe & Errante,* for the defendant.

HON. ARNOLD W. ARONSON, JUDGE TRIAL REFEREE. The issue in this tax appeal is whether services, in lieu of rent received from a caretaker for the use of a cottage located on a Girl Scout camp, constitute rental income to the plaintiff so as to deprive the plaintiff of a tax exemption pursuant to General Statutes § 12-81 (7).

The parties have stipulated to the following facts. The plaintiff, Girl Scouts, CT Trails Council, Inc., is a not-for-profit corporation used for charitable and educational purposes existing under the laws of the state of Connecticut. The plaintiff owns a Girl Scout camp known as Camp Murray consisting of approximately forty-five acres located in the defendant town of East Haven. The plaintiff owns a beach cottage located on the forty-five acre parcel known as 100 Sperry Lane, East Haven, which is used by a full-time caretaker of the property. Although a caretaker lives year-round in the cottage, the camp itself is operated only seasonally during the year. The existence of an on-site caretaker facilitates the running of Camp Murray and furthers the educational and charitable purposes of the Girl Scouts organization. The plaintiff has, at all relevant times, filed the quadrennial exempt status forms with the defendant as required by § 12-81 (7). Prior to October 1, 2000, the plaintiff was granted an exemption from property taxes pursuant to § 12-81 (7). On February 2, 2000, the plaintiff was notified by the East Haven assessor that the camp was generating rental income from the rental of the cottage to the caretaker and, therefore, the tax exemption under § 12-81 (7) no longer applied. The assessor retroactively assessed the subject property at $83,540 for the taxable years of 1997–1999 and issued tax bills in the amount of $3086.80 retroactively to 1997. For the year 2000, the assessor assessed the

subject property at $84,610 and issued a tax bill of $2986.93. For the year 2001, the assessor assessed the subject property at $88,110 and issued a tax bill in the amount of $2986.94. The plaintiff has paid 75 percent of these tax bills.

At trial, the plaintiff presented credible evidence showing that, in 1992, the plaintiff entered into a contractual arrangement with the caretaker, allowing the caretaker to live in the cottage rent free in exchange for his services. These services included: living on the premises full time; opening and closing the camp; meeting and greeting the scouts when they arrived; acting as a ranger on the property and, attending to maintenance of the property, security and fire watch. Although the caretaker generally performed his duties in the evenings and on weekends, he remained available for emergencies twenty-four hours a day at the premises. The caretaker paid the plaintiff $70 per month for the use of electricity at the cottage, although many of the monthly electric bills exceeded $100.

The defendant makes two arguments to support its claim that the plaintiff has lost its tax exemption. First, the defendant claims that the plaintiff is not entitled to an exemption because the plaintiff receives rental income in the form of services provided by the caretaker. Second, the defendant argues that the property is not exempt because the caretaker's year-round services do not exclusively further the educational and charitable purposes of the plaintiff because the camp is in operation for only a portion of the year.

General Statutes § 12-88 provides in pertinent part: "Real property belonging to, or held in trust for, any organization mentioned in subdivision (7) . . . of section 12-81, which real property is so held for one or more of the purposes stated in the applicable subdivision, and from which real property no rents, profits or income

are derived, shall be exempt from taxation . . . . The real property belonging to, or held in trust for, any such organization, not used exclusively for carrying out one or more of such purposes . . . shall not be exempt."

"It is a settled rule of law that statutes which exempt from taxation are to be strictly construed against the party claiming an exemption. . . . Exemptions, no matter how meritorious, are of grace, and must be strictly construed. . . . Exemption from taxation is the equivalent of an appropriation of public funds, because the burden of the tax is lifted from the back of the potential taxpayer who is exempted and shifted to the backs of others. . . . The owners of tax-exempt property in the community derive the same benefits from government as other property owners but pay no property taxes for those benefits." (Citations omitted; internal quotation marks omitted.) *United Church of Christ* v. *West Hartford*, 206 Conn. 711, 718–19, 539 A.2d 573 (1988).

An organization seeking an exemption under § 12-81 (7) must meet three requirements. First, the property must be organized exclusively for scientific, educational, historical or charitable purposes. Second, the property must be held for one of the purposes stated in that statute's list of exemptions. Third, the property must not generate any rent, profits or income. Id., 718.

It is difficult for the court to accept the defendant's reasoning that the property is not exempt because the provision of services by the caretaker for the use of the cottage is rent when the camp is not in operation. This reasoning ignores the fact that the camp consists of forty-five acres of land with camp facilities that require the caretaker, throughout the year, to be a ranger on the property for the purposes of security as

well as fire watching. The caretaker also provides year-round maintenance to the camp facilities. All of the services provided by the caretaker relate to the maintenance and care of the camp and its facilities. Clearly, the year-round services of the caretaker provided in lieu of rent are in furtherance of the charitable purposes of the scout camp, regardless of whether the camp is in session.

Citing *Hartford Hospital* v. *Hartford,* 160 Conn. 370, 377, 279 A.2d 561 (1971), this court concluded in *Isaiah 61:1, Inc.* v. *Bridgeport,* 47 Conn. Sup. 520, 525, 809 A.2d 551 (2002) that "[i]t is the use of the rental income, not the fact that rent is charged, that determines whether the exemption under § 12-81 (7) applies." In the present case, the services performed by the caretaker in lieu of rent are in furtherance of the charitable and educational purposes of the property. The court sees an analogy between the facts in the present case and the facts in *Hartford Hospital.* In *Hartford Hospital,* the hospital owned an apartment building in close proximity to the hospital and rented apartments in the building to hospital staff members so that they would be near the hospital. The court in *Hartford Hospital* stated that "the conclusions of the trial court that the property in question was used exclusively for hospital purposes, that the exclusiveness of the use was not impaired by the fact that the plaintiff charged rent for occupancy of the property and that it qualified for tax exemption under the provisions of §§ 12-81 (16) and 12-88 are correct." *Hartford Hospital* v. *Hartford,* supra, 378.

Accordingly, the court concludes that the services provided by the caretaker to the scout camp in lieu of the payment of rent for the use of the cottage at the camp are for the benefit of the camp in seeing that it is properly maintained and secured all year long. The exclusiveness of the use of the property for charitable

and educational purposes was not impaired by the fact that the caretaker occupied the cottage on the property and performed maintenance, security and other services in lieu of rent year-round while the camp was operated only seasonally. The receipt of the caretaker's services by the plaintiff in lieu of the payment of rent by the caretaker does not destroy the exemption from property tax provided in § 12-81 (7).

Judgment may enter in favor of the plaintiff, sustaining its appeal, without costs to either party.